SIDNEY MILGRIM ET AL. *v.* ANTHONY DELUCA
(12029)

HEALEY, PARSKEY, SHEA, GLASS and BRENNAN, Js.

Argued December 14, 1984—decision released February 12, 1985

*Frank J. Silvestri, Jr.,* for the appellant-appellee (defendant).

*Edwin L. Doernberger,* for the appellees-appellants (plaintiffs).

SHEA, J. The defendant has appealed from a judgment awarding damages for breach of a written contract for removal of gravel and other material from land owned by the plaintiffs. The principal issue raised is whether an earlier dismissal, pursuant to Practice Book, 1963, § 191A[1] of a suit upon the same cause of

---

[1] Practice Book, 1963, § 191A was in effect on July 15, 1975, when the first action of the plaintiffs was dismissed and it provided as follows: "If a party shall fail to prosecute an action with reasonable diligence, the court may, after hearing on at least two weeks' notice, on motion by any party to the action pursuant to Sec. 154, or of its own motion, render a judgment dismissing the action with costs. In such cases, judgment files shall

action because of failure to prosecute with reasonable diligence bars the present action under the doctrine of res judicata. We conclude that such a dismissal in our practice does not have this consequence. The defendant also claims that the court used an incorrect price in computing the damages allowed for the disputed quantity of material excavated and that a deduction should have been made for a commission owed by the plaintiffs to a third party. In a cross appeal the plaintiffs claim error in the dismissal of the second count of their complaint pursuant to Practice Book § 302[2] for failure to make out a prima facie case and in the refusal to include interest in the award. We find no error on the cross appeal. On the appeal we find an error in the calculation of damages and modify the judgment accordingly.

I

It is not disputed that the plaintiffs did commence an earlier suit upon the same claim for which they have obtained judgment in the present action and that the first suit was dismissed for failure to prosecute with reasonable diligence in accordance with Practice Book, 1963, § 191A. The defendant maintains, as he did in

not be drawn except where an appeal is taken or where any party so requests. To record the judgment, the clerk may place on the reverse side of the docket sheet a notation in substantially the following form:

Judgment dismissing action entered *(here insert date), (here insert name of judge),* J., in favor of *(here insert name of prevailing party)* and against *(here insert name of the party against whom judgment was rendered).* Costs taxed at $          .

By the Court,

.....................Clerk.''

[2] Practice Book § 302 provides: "If, on the trial of any issue of fact in a civil action tried to the court, the plaintiff has produced his evidence and rested his cause, the defendant may move for judgment of dismissal, and the court may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made."

the trial court,[3] that such a disciplinary dismissal should be given res judicata effect to bar the second suit. We disagree.

Unlike Practice Book § 3109, which provides that a dismissal for lack of diligence in the Supreme Court "shall operate as an adjudication upon the merits," § 191A did not specify the consequences of such a dismissal in the trial court except to indicate that costs were taxable. We have previously determined, however, that such a judgment of dismissal is a final judgment that is appealable but not subject to modification in the trial court unless proceedings to open are commenced within the term of court at which the judgment was rendered. *Jenkins* v. *Ellis,* 169 Conn. 154, 160, 362 A.2d 831 (1975). Such finality, nevertheless, does not imply an adjudication on the merits in the absence of an express provision to that effect. Before our decision in *Jenkins* v. *Ellis,* supra, we had held that an order striking a case from the docket for failure to prosecute pursuant to Practice Book, 1934, § 193 was also a final judgment but did not constitute a judgment on the merits. *Bridgeport Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 196, 91 A.2d 778 (1952). "It does not conclude the parties as to the cause of action involved in the case, because it is not a final determination of the substantive rights of the parties." Id. In several recent cases we have indicated that a dismissal for failure to prosecute pursuant to Practice Book § 251,[4] which succeeded

---

[3] The defendant pleaded res judicata as a special defense and moved for summary judgment based upon facts set forth in an affidavit. The plaintiffs disputed none of the facts relied upon. The motion was denied by the court, *DeVita, J.,* before the case was reached for trial. The motion was renewed at the start of trial, but was again denied by the court, *Bogdanski, J.*

[4] Practice Book § 251, which became effective on October 1, 1979, provides: "If a party shall fail to prosecute an action with reasonable diligence, the court may, after hearing, on motion by any party to the action pursuant to Sec. 196, or on its own motion, render a judgment dismissing the action with costs. At least two weeks' notice shall be required except in cases appearing on an assignment list for final adjudication. Judgment files shall not be drawn except where an appeal is taken or where any party so requests."

§ 191A, is not an adjudication on the merits that can be treated as res judicata. *Gionfrido* v. *Wharf Realty, Inc.,* 193 Conn. 28, 34 n.6, 474 A.2d 787 (1984); *Greenwich* v. *Liquor Control Commission,* 191 Conn. 528, 544, 469 A.2d 382 (1983); *Pacelli Bros. Transportation, Inc.* v. *Pacelli,* 189 Conn. 401, 411–12, 456 A.2d 325 (1983).

In the face of this array of precedent, the defendant contends (1) that our failure to accord res judicata effect to disciplinary dismissals deprives that sanction for lack of diligence on the part of a plaintiff of any teeth; and (2) that such failure is inconsistent with our decisions treating default judgments as adjudications on the merits.

It cannot be said that a disciplinary dismissal that does not preclude a litigant from commencing another action on the same claim is wholly ineffective as a sanction, since additional legal fees and expenses must be incurred in doing so and the new suit must normally await the disposition of earlier cases. Without information as to the proportion of cases dismissed pursuant to § 251 that are brought a second time, it is not possible to assess the efficacy of § 251 as a device for remedying docket congestion. See *Jenkins* v. *Ellis,* supra, 159. We must presume that, if the judges of the Superior Court should come to view § 251 with its present sanction as inadequate for the task, they will amend the rules to provide a greater penalty for a plaintiff's delinquency, such as that prescribed by Supreme Court Rule § 3109 or by Federal Rule § 41 (b).[5] We are not

---

[5] Rule 41 (b) of the Federal Rules of Civil Procedure provides: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier

persuaded that we should attempt to implement a policy against lack of diligence in the trial court by construing § 251 in a manner wholly at variance with precedents upon which parties may well have relied.

We see little merit in the claim of the defendant that a disciplinary dismissal must be given the same effect as a default judgment in precluding further litigation of the same claim. In *Slattery* v. *Maykut,* 176 Conn. 147, 157, 405 A.2d 76 (1978), we held that "a judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata in the absence of fraud or collusion even if obtained by default, and is just as conclusive an adjudication between the parties of whatever is essential to support the judgment as when rendered after answer and complete trial." This rule is followed in the federal system and by most state courts. Id.; *Morris* v. *Jones,* 329 U.S. 545, 550–51, 67 S. Ct. 451, 91 L. Ed. 488 (1947); 1B Moore's Federal Practice § 0.409[4], p. 323; annot., 77 A.L.R.2d 1410, 1419; 47 Am. Jur. 2d, Judgments § 1200. On the other hand, "[a] personal judgment for the defendant, although valid and final, does not bar another action by the plaintiff on the same claim . . . (c) [w]hen by statute or rule of court the judgment does not operate as a bar to another action on the same claim, or does not so operate unless the court specifies and no such specification is made." 1 Restatement (Second), Judgments § 20 (1) (c). As previously explained, we have uniformly construed our rules pertaining to dismissals for failure to prosecute with reasonable diligence not to

of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52 (a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

bar a subsequent action on the same claim. "[T]o support a defense of res judicata, it must be clear that the court, by the previous dismissal, intended that the disposition was to be without right to further proceedings by the plaintiff." 46 Am. Jur. 2d, Judgments § 481. Unlike Federal Rule § 41 (b), our current rules of practice do not authorize a trial court to dismiss a civil case with prejudice for lack of diligence in prosecution. Cf. Practice Book § 819.

In our practice there are substantial reasons underlying the distinction between default judgments and dismissals in respect to relitigation of the merits of a cause. Our rules and statutes provide substantially more safeguards to protect a defendant against an erroneous default judgment for failure to appear or plead or for other delict than are available for a plaintiff whose action is subjected to a dismissal. Requirements for notice prior to entry of judgment are generally more elaborate. Initially the defendant must be served with the complaint personally, by registered mail or by a court supervised order of publication. See General Statutes §§ 52-54, 52-59b (c) through 52-68; Practice Book §§ 199 through 202. If a default for failure to appear is sought, a copy of the motion must be mailed or otherwise delivered to him and the plaintiff's attorney must so certify. Practice Book §§ 121 through 123. Similar notice must be given before a default for failure to plead or comply with orders to revise pleadings or to disclose may be entered. Practice Book § 363. Affidavits that nonappearing defendants are not in the military service must be filed or a finding to like effect made. Practice Book § 353. Affidavits of debt or testimony at a hearing in damages must be presented before a monetary judgment can be rendered. Practice Book § 358. Where a hearing in damages is necessary after entry of a default for failure to appear or for other reason, a defendant may, if he properly notifies the plaintiff,

contest the liability issues and, even without notice, contest damages. General Statutes § 52-221; Practice Book §§ 367 through 374. In contrast, dismissals for failure to prosecute are often entered routinely at annual docket clearing proceedings conducted by the court suo motu when the only notice sent prior to entry of such a judgment is a list of numerous cases assigned because certain time frames have been exceeded.[6] Also, unlike a plaintiff who suffers the moderate sanctions of additional delay, expenses in bringing another action and court costs resulting from a dismissal, a defendant would suffer only the penalty of costs. Thus, he often would be motivated to protract proceedings endlessly if he were allowed to relitigate the issues in a case where, despite the protections afforded, he had been defaulted.

## II

A statement of some of the facts found by the trial referee is necessary for consideration of the remaining claims of the defendant. On October 15, 1971, the parties executed a written contract for the defendant to purchase and remove from land of the plaintiffs located in Milford 100,000 cubic yards of gravel at the price of $1.10 per cubic yard. Both the buyer and the seller agreed to keep "tallies" of the removed material and payment for the quantities removed was to be made every two weeks. The defendant kept slips indicating the quantities taken from the property by its trucks and submitted copies to the plaintiffs. On April 20, 1972, the original agreement was amended by including some new provisions, and the price of the gravel was increased to $1.15 per cubic yard. The plain-

---

[6] The dismissal of the first action brought by the plaintiffs occurred as a result of the dormant case program conducted by the Superior Court in Bridgeport on April 21, 1975. The action was included in a list of nineteen nonfamily civil cases to be dismissed pursuant to Practice Book, 1963, § 191A automatically unless the court should order otherwise.

tiffs terminated the contract on September 18, 1972, as provided in the amendment. Upon termination they conducted a survey indicating that substantially more gravel had been removed than the defendant had paid for. The trial court found the total quantity of gravel removed to be 25,665 cubic yards and, applying the price in the amended agreement of $1.15 per cubic yard, arrived at the sum of $29,514.75 for gravel.[7]

The defendant claims that the court erred in using the price of $1.15 rather than $1.10 in calculating the amount due because there was no evidence to indicate how much gravel had been removed before the amendment of April 20, 1972, which increased the price. As he contends, the plaintiffs had the burden of proving their damages, including their entitlement to the higher price for gravel removed after the increase. *Willametz* v. *Goldfeld,* 171 Conn. 622, 628, 370 A.2d 1089 (1976); *Jones Destruction, Inc.* v. *Upjohn,* 161 Conn. 191, 199, 286 A.2d 308 (1971). In fact, there was evidence produced by the plaintiffs in the form of a compilation of the slips submitted by the defendant for quantities of gravel removed during the course of the excavation. This compilation, the accuracy of which the defendant has never disputed, indicates that from the execution of the original contract on October 15, 1971, to December 30, 1971, when the defendant ceased operations for the winter months, 4802 cubic yards of gravel were removed. The defendant did not resume its work of excavating gravel until May 1, 1972, after the price had been increased to $1.15 per yard by the April 20, 1972 amendment. Since the defendant does not contest the truth of the compilation, the trial referee was justified in concluding from the evidence that the increased price of $1.15 should be applied to all the gravel found to have

---

[7] To the sum of $29,514.75 for gravel was added $4417.50 for other material removed, the total being $33,932.25. From this figure the court subtracted $7124.05 paid by the defendant, leaving $26,808.20 due the plaintiffs.

been removed, except for the 4802 cubic yards taken during the period October 15 to December 30, 1971. It was erroneous for the court to apply the higher price to *all* the gravel found to have been removed, because the plaintiffs admitted that a substantial quantity had been removed by the defendant before the date of the price increase. Accordingly, the judgment should be modified by deducting $240.10 therefrom, representing the five cent lower price applicable to the 4802 cubic yards removed prior to April 20, 1972.

The remaining claim of the defendant, that a deduction should be made for a commission claimed to be owed by the plaintiffs to the estate of Thomas Nolan, a broker who produced the defendant as a customer of the plaintiffs, is virtually frivolous. A debtor can hardly set off against his own liability obligations which his creditors may owe to others. In any event, it appears that no commissions are due until payment is received, an eventuality that has not yet occurred.

### III

On the cross appeal the plaintiffs claim error in the dismissal pursuant to Practice Book § 302 of the second count of the complaint for failure to make out a prima facie case. They also claim that they were entitled to interest on the sum found to be owed by the defendant upon the remaining counts.

The second count alleged a breach of a provision contained in the amendment of April 20, 1972, based upon excavation by the defendant below the water table and also upon its failure to provide suitable drainage as required by the town of Milford. The only evidence presented in support of this count related entirely to activities of the defendant in 1971, prior to the amendment. The trial court properly determined that such evidence was insufficient to prove a breach of a provision of the agreement not in existence until several months after

the events in 1971 relied upon. The plaintiffs have not even claimed that the later provision was to apply retroactively.

With regard to the claim for prejudgment interest, we conclude that the trial court did not abuse its discretion in failing to include this element in the award. There was evidence that the defendant was not informed of the plaintiffs' claim that more gravel had been removed than had been paid for until two years after its operations on the plaintiffs' property had ceased. There were substantial differences in the figures for material removed given during pretrial discovery proceedings and those presented at trial. "The real question in each case is whether the detention of the money is or is not wrongful under the circumstances." *Cecio Bros., Inc.* v. *Feldmann,* 161 Conn. 265, 275, 287 A.2d 374 (1971). "The allowance of interest as an element of damages is, thus, primarily an equitable determination and a matter lying within the discretion of the trial court." *Bertozzi* v. *McCarthy,* 164 Conn. 463, 467, 323 A.2d 553 (1973). The evidence amply supports the trial court's decision not to award interest. See *Southern New England Contracting Co.* v. *State,* 165 Conn. 644, 664–65, 345 A.2d 550 (1974).

There is no error on the cross appeal. On the appeal, there is error in part and the case is remanded with direction to modify the judgment of $26,808.20 damages in favor of the plaintiffs by subtracting therefrom the sum of $240.10.

In this opinion the other judges concurred.