464

FRANCES LACASSE ET AL. *v.* J. WILLIAM BURNS,
COMMISSIONER OF TRANSPORTATION
(13776)

ZBIGNIEW KILIAN *v.* J. WILLIAM BURNS,
COMMISSIONER OF TRANSPORTATION
(13795)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued January 2—decision released April 3, 1990

*Michael E. Grossmann,* with whom, on the brief, was *Timothy Brignole,* for the appellants (plaintiffs in the first case).

*Kenneth I. Friedman,* with whom, on the brief, was *Michael E. Wolf,* for the appellant (plaintiff in the second case).

*Louis B. Blumenfeld,* for the appellee (defendant in both cases).

SHEA, J. Each of these appeals presents the following questions: (1) May a plaintiff take advantage of the accidental failure of suit statute, General Statutes § 52-592,[1] when seeking to bring an action for personal injuries allegedly caused by a defective highway maintained by the state? (2) Does a dismissal entered pursuant to Practice Book § 251[2] constitute a failure "for

---

[1] General Statutes § 52-592 (a) provides in part: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form; or if, in any such action after a verdict for the plaintiff, the judgment has been set aside, or if a judgment of nonsuit has been rendered or a judgment for the plaintiff reversed, the plaintiff, or, if the plaintiff is dead and the action by law survives, his executor or administrator, may commence a new action, except as provided in subsection (b) of this section, for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment."

[2] Practice Book § 251 provides in part: "If a party shall fail to prosecute an action with reasonable diligence, the court may, after hearing, on motion by any party to the action pursuant to Sec. 196, or on its own motion, ren-

any matter of form," and thus allow a plaintiff to bring suit under the authority of § 52-592? (3) Does service made in accordance with General Statutes § 52-593a[3] "commence" an action as specified in § 52-592? We answer all of these questions in the affirmative and, consequently, conclude that the trial court erred in granting the defendant's motions to dismiss.

In the first case the plaintiffs, Frances and Marshall Lacasse, brought an action against the defendant, the commissioner of transportation (commissioner), pursuant to General Statutes § 13a-144,[4] alleging personal injuries caused by a defective portion of highway in the town of Granby. The plaintiff in the second case, Zbigniew Kilian, also brought an action against the commissioner pursuant to § 13a-144, alleging personal

der a judgment dismissing the action with costs. At least two weeks' notice shall be required except in cases appearing on an assignment list for final adjudication. Judgment files shall not be drawn except where an appeal is taken or where any party so requests."

[3] During the time period relevant to these appeals, General Statutes § 52-593a provided in part: "(a) A cause or right of action shall not be lost because of the passage of the time limited by law within which the action may be brought, if the process to be served is personally delivered to an officer authorized to serve the process or is personally delivered to the office of any sheriff within the time limited by law, and the process is served, as provided by law, within fifteen days of the delivery."

[4] General Statutes § 13a-144 provides in part: "Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the commissioner of transportation to keep in repair, or by reason of the lack of any railing or fence on the side of such bridge or part of such road which may be raised above the adjoining ground so as to be unsafe for travel or, in case of the death of any person by reason of any such neglect or default, the executor or administrator of such person, may bring a civil action to recover damages sustained thereby against the commissioner in the superior court. No such action shall be brought except within two years from the date of such injury, nor unless notice of such injury and a general description of the same and of the cause thereof and of the time and place of its occurrence has been given in writing within ninety days thereafter to the commissioner."

injuries caused by a defective portion of highway in the town of Berlin. Both actions were dismissed pursuant to Practice Book § 251, on June 19, 1987. The present writ, summons and complaint in each case was delivered to a sheriff for the purpose of service upon the commissioner on June 17, 1988, in the second case and on June 18, 1988, in the first case. The commissioner filed a motion to dismiss in each action, alleging that: (1) the doctrine of sovereign immunity precluded the bringing of any action against the state under the authority of § 52-592; (2) the dismissal of an action pursuant to Practice Book § 251 did not constitute an accidental failure of suit, as defined in § 52-592; and (3) neither action was "commenced" within one year of the prior dismissals, as mandated by § 52-592.

The trial court, in identical memoranda of decision, disagreed with the commissioner's second and third contentions, but agreed with the first and, therefore, granted the commissioner's motions to dismiss. The court reasoned that because § 52-592 contained neither an express nor an implied waiver of the state's sovereign immunity, the plaintiffs were strictly limited to the remedy provided them in § 13a-144. The court concluded that since there had been "no consent [by the state] to maintain the 'new action' described in . . . § 52-592," the plaintiffs were foreclosed from bringing any action because more than two years had passed since the time of the injuries complained of. General Statutes § 13a-144. We disagree with this reasoning and conclude that the plaintiffs were not precluded from maintaining their actions pursuant to § 52-592.[5]

---

[5] The commissioner filed a preliminary statement of issues in each appeal setting forth, as alternate grounds upon which the judgment of the trial court may be affirmed, the other issues raised in his motion to dismiss but decided by the trial court in favor of the plaintiffs. The plaintiffs have fully briefed both issues. See Practice Book § 4013 (a) (1).

I

The issue presented by the plaintiffs' claims of error is whether the legislature, by waiving the state's sovereign immunity in § 13a-144, intended that procedural statutes and rules of court be applied to the state, just as they would be applied to any other litigant. We conclude that the legislature so intended.

"That a sovereign state is immune from suit, unless it consents to be sued, is the settled law of Connecticut." *Murphy* v. *Ives,* 151 Conn. 259, 262, 196 A.2d 596 (1963); *White* v. *Burns,* 213 Conn. 307, 312, 567 A.2d 1195 (1990); *Duguay* v. *Hopkins,* 191 Conn. 222, 227, 464 A.2d 290 (1983). "The General Assembly, by appropriate legislation, can waive the state's sovereign immunity from suit and authorize suits against the state." *Murphy* v. *Ives,* supra. "Indeed this is what the legislature did in the area of highway defects when it enacted the state and municipal highway liability statutes. The state, which ordinarily would not be liable, permitted itself, as a matter of grace, to be sued under the express conditions of the statute." *White* v. *Burns,* supra. "But the state's sovereign right not to be sued without its consent is 'not to be diminished by statute, unless a clear intention to that effect on the part of the legislature is disclosed, by the use of express terms or by force of a necessary implication.' " *Murphy* v. *Ives,* supra, 262–63, quoting *State* v. *Kilburn,* 81 Conn. 9, 11, 69 A. 1028 (1908). Thus, where the state has "permitted itself to be sued in certain circumstances, this court has recognized the well established principle that statutes in derogation of sovereign immunity should be strictly construed." *White* v. *Burns,* supra.

In applying these principles, our decisions have consistently treated the state with respect to procedural

matters,[6] once its immunity has been waived, in a manner identical to any other litigant, except for the taxation of costs; *State* v. *Chapman,* 176 Conn. 362, 366, 407 A.2d 987 (1978); *State ex rel. Foote* v. *Bartholomew,* 111 Conn. 427, 432, 150 A. 308 (1930); *State* v. *Anderson,* 82 Conn. 392, 394, 73 A. 751 (1909); or the award of prejudgment interest when a defendant has failed to accept an offer of judgment equal to or less than the amount recovered. *Struckman* v. *Burns,* 205 Conn. 542, 556, 534 A.2d 888 (1987). Those cases were based upon the understanding that "[w]hen a generalized statute allows plaintiffs to collect certain varieties of damages in particular types of civil actions . . . it does not waive a state's sovereign immunity in that area unless there is an express waiver." Id., 559. This principle is inapplicable, however, since the question in these cases is not whether the state's monetary liability can be expanded beyond that provided by a statute permitting the state to be sued, but, rather, whether the state, having consented to being sued, is subject to procedural statutes applicable to all other litigants.

We have long held that, once involved in an action, the state enjoys the same status as any other litigant. Thus, for example, the state, when it brings an equitable action, opens "the door to any defense or cross-complaint germane to the matter in controversy . . . .

[6] In *Skinner* v. *Angliker,* 211 Conn. 370, 559 A.2d 701 (1989), this court held that the state's waiver of sovereign immunity in a suit pursuant to General Statutes § 31-51q for a wrongful discharge claimed to have been motivated by the plaintiff's exercise of his constitutional right of free speech did not entitle the plaintiff to a jury trial, whether or not actions for wrongful discharge may have been triable to a jury in this state prior to the adoption of our state constitution in 1818. See General Statutes § 52-215. The court in *Skinner* treated the state differently from other litigants with respect to actions triable to a jury not simply because of its sovereign status but because "[n]o principle of common law, prior to 1818, *allowed actions against the state* for wrongful discharge or related claims." (Emphasis added.) Id., 377. The plaintiff's action did not, therefore, fall within the class of actions triable to a jury prior to 1818.

A sovereign who asks for equity must do equity." *State* v. *Kilburn,* supra, 12. "[B]y bringing an action, the State subjects itself to the procedure established for its final and complete disposition in the courts, by way of appeal or otherwise." *Reilly* v. *State,* 119 Conn. 217, 220, 175 A. 582 (1934); see *State* v. *Hartford Accident & Indemnity Co.,* 136 Conn. 157, 160 n.1, 70 A.2d 109 (1949); *Winchester* v. *Cox,* 129 Conn. 106, 113, 26 A.2d 592 (1942). We see no reason to depart from this principle when, as in these cases, the state has specifically waived its sovereign immunity and the procedural statute in question affects only the time during which the suit may be brought rather than the potential amount of the state's liability. Cf. *Korb* v. *Bridgeport Gas Light Co.,* 91 Conn. 395, 402, 99 A. 1048 (1917) (accidental failure of suit statute applicable regardless of whether the statute of limitations is one which concerns the remedy only, or the right as well as the remedy); see *Isaac* v. *Mount Sinai Hospital,* 210 Conn. 721, 726–29, 557 A.2d 116 (1989).

Our conclusion that the state is to be treated as any other litigant after being summoned to defend itself pursuant to § 13a-144 is bolstered by the very language of § 52-592, our accidental failure of suit statute. A plaintiff, by the terms of the statute, may "commence a new action . . . for *the same cause* at any time within one year," when *"any action,* commenced within the time limited by law, has failed" for any one or more of the enumerated reasons. (Emphasis added.) General Statutes § 52-592 (a). "This language certainly is general and comprehensive. It neither embodies exceptions or reservations, nor suggests any." *Korb* v. *Bridgeport Gas Light Co.,* supra, 401. Further, we have consistently held that § 52-592 is remedial in nature and thus, should be broadly and liberally construed. *Isaac* v. *Mount Sinai Hospital,* supra, 728, and cases cited therein. We conclude, on the basis of the language and

evident purpose of § 52-592, that the trial court erred in concluding that the doctrine of sovereign immunity was applicable to the plaintiffs' actions, since the statute is procedural in nature and is to be applied, absent further guidance from the legislature, to the state in the same manner as it would be applied to any other litigant.

## II

The commissioner argues that the decision of the trial court may be affirmed on the alternate ground that a plaintiff who has suffered a judgment of dismissal pursuant to Practice Book § 251 is precluded from taking advantage of the accidental failure of suit statute, § 52-592. The trial court, on the basis of a statement made by this court in *Gionfrido* v. *Wharf Realty, Inc.,* 193 Conn. 28, 34 n.6, 474 A.2d 787 (1984), concluded that a dismissal entered pursuant to § 251 would not bar a subsequent action brought under the authority of § 52-592. In these cases, we agree with the trial court.

The commissioner argues initially that "in applying Section 52-592 to this case, it must be strictly construed so as not to expand the waiver of sovereignty." This contention, however, is inconsistent with our conclusion in the first portion of this opinion that, once validly summoned into court, the state is to be treated procedurally just like any other litigant. Accordingly, it would make little sense to construe procedural rules and statutes strictly in favor of the state. This is especially true when dealing with a remedial statute such as § 52-592, which is to be "liberally interpreted." *Ross Realty Corporation* v. *Surkis,* 163 Conn. 388, 393, 311 A.2d 74 (1972). Taken to its logical conclusion, the commissioner's argument would require that we adopt two bodies of procedural law, one applicable to ordinary liti-

gants and another to be applied only to the state. We decline to engage in any such development.

The commissioner next argues that a dismissal under Practice Book § 251 does not constitute a failure for a "matter of form," because: (1) that term does not include all actions not tried on their merits; *Hughes* v. *Bemer,* 206 Conn. 491, 494–95, 538 A.2d 703 (1988); (2) the dismissal is disciplinary in nature and results from irresponsibility rather than mere omission; (3) "[t]he judiciary must have an effective system of case-flow management to prevent cases from clogging dockets because of lack of diligent prosecution"; (4) the order is not necessarily permanent; see General Statutes § 52-212; Practice Book § 326; and (5) it is probable that the judges of the Superior Court chose to utilize the word "dismissal" rather than "nonsuit" in § 251, in order to preclude the application of § 52-592.[7] While we do not necessarily disagree with all of these contentions, we conclude, nevertheless, that in these cases the dismissals pursuant to § 251 constituted failures for a "matter of form," as that term is used in § 52-592.

While it has been said, in relation to a predecessor of § 52-592, that "[t]he phrase, 'any matter of form,' was used in contra-distinction to matter of substance, as embracing the real merits of the controversy between the parties"; *Johnston* v. *Sikes,* 56 Conn. 589, 592 (Conn. Super. 1888) (decision by Justice Loomis,

---

[7] General Statutes § 52-592 (a) specifically provides that its provisions are available when the prior action was "avoided or defeated . . . for any matter of form" or when "a judgment of nonsuit has been rendered" in the prior action. Thus, while all judgments of nonsuit are included within the scope of § 52-592, the proper inquiry is not whether the use of the term "dismissal" rather than "nonsuit" in Practice Book § 251 is particularly significant, but, rather, whether a "dismissal" entered pursuant to § 251 results in the prior action having been "avoided or defeated . . . for any matter of form." We note also that § 52-592 (a), is expressly made available to a plaintiff whose prior action was *dismissed* for want of jurisdiction." (Emphasis added.)

sitting in the Superior Court); we have never expressly adopted such a distinction to control the application of the accidental failure of suit statute. Thus, we stated in *Hughes* v. *Bemer,* supra, 494–95, that § 52-592 "does not authorize the reinitiation of all actions not 'tried on . . . [their] merits,' only those that have failed for, among other reasons, 'any matter of form.' " We have held, however, that a dismissal entered pursuant to § 251 "is not an adjudication on the merits that can be treated as res judicata. *Gionfrido* v. *Wharf Realty, Inc.,* [supra 34 n.6]; *Greenwich* v. *Liquor Control Commission,* 191 Conn. 528, 544, 469 A.2d 382 (1983); *Pacelli Bros. Transportation, Inc.* v. *Pacelli,* 189 Conn. 401, 411–12, 456 A.2d 325 (1983)." *Milgrim* v. *Deluca,* 195 Conn. 191, 195, 487 A.2d 522 (1985). On the basis of these holdings, we have also stated, albeit in dicta, that § 52-592 is available to plaintiffs who have suffered a dismissal, pursuant to § 251, for lack of reasonable diligence in the prosecution of their actions. *Gionfrido* v. *Wharf Realty, Inc.,* supra; see *Hughes* v. *Bemer,* supra, 494 n.5.

In cases where we have either stated or intimated that the "any matter of form" portion of § 52-592 would not be applicable to a subsequent action brought by a plaintiff, we have concluded that the failure of the case to be tried on its merits had not resulted from accident or even simple negligence. See *Hughes* v. *Bemer,* supra, 495 (failure to file a required memorandum of law operates as a consent to judgment on the merits resulting from granting a motion to strike); *Pavlinko* v. *Yale-New Haven Hospital,* 192 Conn. 138, 144, 470 A.2d 246 (1984) (dismissal pursuant to Practice Book § 231 for deliberate refusal to answer questions at a deposition); *Parrott* v. *Meachum,* 161 Conn. 573, 575, 290 A.2d 335 (1971) (voluntary withdrawal of prior suit); *Baker* v. *Baningoso,* 134 Conn. 382, 387, 58 A.2d 5 (1948) (voluntary withdrawal of prior suit). Unlike these cases, the

records in the present appeals reveal nothing about the reasons for dismissal of the plaintiffs' actions, other than that the orders were entered pursuant to Practice Book § 251. Given the state of the records in these cases, as well as the wide range of circumstances that could logically result in a dismissal under this rule, we conclude that it would be inappropriate to preclude the plaintiffs from taking advantage of § 52-592 and bringing their actions once again.

As we have previously observed, "[i]t cannot be said that a disciplinary dismissal that does not preclude a litigant from commencing another action on the same claim is wholly ineffective as a sanction, since additional legal fees and expenses must be incurred in doing so and the new suit must normally await the disposition of earlier cases." *Milgrim* v. *Deluca,* supra, 195. Further, "dismissals for failure to prosecute are often entered routinely at annual docket clearing proceedings conducted by the court suo motu when the only notice sent prior to entry of such a judgment is a list of numerous cases assigned because certain time frames have been exceeded." Id., 198. "Under § 251, the trial court is confronted with endless gradations of diligence, and in its sound discretion, the court must determine whether the party's diligence falls within the 'reasonable' section of the diligence spectrum." *Jaconski* v. *AMF, Inc.,* 208 Conn. 230, 234, 543 A.2d 728 (1988). In the cases before us, the plaintiffs' diligence presumably did not fall within the "reasonable" section of the spectrum contemplated by § 251. We conclude that that fact alone, however, is not sufficient to overcome the broad, remedial provisions of the accidental failure of suit statute. We hold, therefore, that the trial court correctly determined that in these cases, the prior dismissals of the plaintiffs' actions, entered pursuant to § 251, constituted failures "for any matter of form."

## III

The commissioner also claims that the decision of the trial court may also be affirmed on the ground that the plaintiffs' actions were not "commenced" within the one year time frame specified in § 52-592. The commissioner acknowledges that in both cases the plaintiffs' writ, summons and complaint were delivered to a sheriff and subsequently served upon him within the time period authorized by General Statutes § 52-593a, "within fifteen days of the delivery" of the writ to a proper officer. The commissioner argues, nevertheless, that because in Connecticut an action is not "commenced" until process is actually served upon the defendant; *Broderick* v. *Jackman,* 167 Conn. 96, 99, 355 A.2d 234 (1974); *Spalding* v. *Butts,* 6 Conn. 28, 30 (1825); and because § 52-592 utilizes the term "commence" rather than the term "brought," which is found in § 52-593a, the plaintiffs' actions were barred, service not having been made until one year and one day after the June 19, 1987 dismissal of the plaintiffs' prior actions. When this claim was presented to the trial court, it concluded merely that the "action[s] [were] begun within the statutory time. Conn. Gen. Stat. §§ 52-593a; 52-592." We agree with the trial court.

Initially, the commissioner's reliance upon *Broderick* v. *Jackman,* supra, and *Spalding* v. *Butts,* supra, is misplaced. This court, in *Broderick,* cited *Consolidated Motor Lines, Inc.* v. *M & M Transportation Co.,* 128 Conn. 107, 109, 20 A.2d 621 (1941), which interpreted *Spalding* to have held that "the time when the action is regarded as having been *brought* is the date of service of the writ upon the defendant." (Emphasis added.) *Consolidated Motor Lines, Inc.* v. *M & M Transportation Co.,* supra; see also *Seaboard Burner Corporation* v. *DeLong,* 145 Conn. 300, 303, 141 A.2d 642 (1958). Thus, for almost one half century this court has

476

seen no distinction between "commencing" and "bringing" an action. We see no reason to make one now. Additionally, the commissioner has presented us with no logical reason why the legislature would choose to preclude the application of § 52-593a by resorting to whatever grammatical distinction might exist between the terms "commence" and "brought," when those terms have been used interchangeably to describe the initiation of an action.[8]

There is error on each appeal, the judgments are set aside and the cases are remanded with direction to deny the motions to dismiss and for further proceedings.

In this opinion the other justices concurred.

[8] Compare General Statutes §§ 52-575 ("commenced" and "bring"), 52-575a ("brought" and "commenced"), 52-576 ("brought"), 52-577 ("brought"), 52-577a ("brought"), 52-577b ("commenced"), 52-577c ("brought"), 52-577d ("brought"), 52-578 ("brought"), 52-579 ("brought"), 52-581 ("brought"), 52-582 ("brought"), 52-583 ("brought"), 52-584 ("brought"), 52-584a ("brought"), 52-584b ("brought"), 52-585 ("brought"), 52-586 ("brought"), 52-587 ("brought"), 52-588 ("brought"), 52-589 ("brought"), 52-591 ("bringing" and "commence"), 52-592 ("bringing," "brought" and "commence"), 52-593 ("bring"), 52-593a ("brought"), 52-594 ("institute"), 52-596 ("brought"), and 52-597 ("brought").