[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS
The defendant moves to dismiss the plaintiff's complaint on the ground that the court lacks subject matter jurisdiction because the state is immune from suit by reason of the doctrine of sovereign immunity.
By complaint dated June 27, 1996, the plaintiff, Hi-Ho Shopping Mall Venture, Inc., commenced this action against the defendant, Manafort Brothers, Inc. ("Manafort"), to recover compensation for damages the plaintiff incurred when one of its office buildings allegedly suffered serious structural damages caused by the defendants' negligent demolition of a parking garage located on an abutting property and owned by the State of Connecticut. On May 7, 1997, the plaintiff filed a motion to cite Fusco Corporation ("Fusco"), the general contractor for the project, and the State of Connecticut ("state"), the owner of the property, as additional party defendants.
By way of an amended one count complaint dated May 7, 1997, the plaintiff alleges that the plaintiff conveyed to the state a CT Page 12957 property known as Hi-Ho Mall ("conveyed property") by warranty deed dated June 20, 1994. (Complaint, ¶ 10; plaintiff's Exhibit A.) The deed included a section setting forth easements granted by the state for the benefit of the plaintiff and providing that, in the event that any buildings or structures located on the conveyed property had to be demolished, the state would not undertake the demolition of any structures located within 5.001 feet from the common boundary line shared by the plaintiff's and the State's properties. (Plaintiff's Exhibit A, p. 4.)
Subsequently, the state hired Fusco to act as the general contractor for a construction project on the conveyed property pursuant to certain plans concerning the development of facilities for the Housatonic Community-Technical College and the Bridgeport Government Center Parking Garage. (Complaint, ¶ 4.) Fusco was to furnish the design, engineering, plans, specifications, inspection and testing of all work associated with the project, including plans for the demolition of existing structures. (Complaint, ¶ 5.) All work submitted by Fusco was reviewed and approved by the state. (Complaint, ¶ 6.) Fusco engaged Manafort as a subcontractor to perform part of the work, including the demolition of the existing parking garage. (Complaint, ¶ 3.) On September 1, 1995, Manafort undertook the demolition of a parking garage and other structures located on the conveyed property, which adjoins the plaintiff's allegedly damaged premises. The plaintiff alleges that Manafort negligently performed the demolition work in a way that caused extensive structural damage to the plaintiff's building. (Complaint, ¶ 9.) The plaintiff further alleges that the state permitted demolition to be conducted within 5.001 feet from the common boundary line in violation of the terms of the conveyance deed and therefore breached its express agreement with the plaintiff, as set forth in that deed. The plaintiff further alleges that by permitting Fusco and Manafort to conduct demolition in violation of the agreement, the state caused and permitted a trespass on plaintiff's land which resulted in the damages complained of. (Complaint, ¶ 11.)
The state filed a motion to dismiss and a supporting memorandum of law on July 15, 1997. The plaintiff filed a memorandum of law in opposition to the state's motion to dismiss on August 25, 1997.
"A motion to dismiss . . . properly attacks the jurisdiction CT Page 12958 of the court essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted. Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." Upsonv. State, 190 Conn. 622, 624, 461 A.2d 991 (1983). "The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter. . . ." (Internal quotation marks omitted.)Sadloski v. Manchester, 235 Conn. 637, 645-46 n. 13, 668 A.2d 1314
(1995). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) FederalIns. Corp. v. Peabody, N.E., Inc., 239 Conn. 93, 99,680 A.2d 1321 (1996).
In its memorandum of law in support of the motion to dismiss, the state does not contest any of the factual allegations contained in the plaintiff's complaint, but argues that the state is shielded from liability by the doctrine of sovereign immunity and therefore cannot be sued unless it expressly waived its immunity. Because in the present case the plaintiff has failed to allege that the state has waived its sovereign immunity and has consented to be sued for the damages suffered by the plaintiff, the state argues, the plaintiff's claim is barred and must be dismissed by the court for lack of subject matter jurisdiction. The plaintiff counters that the state cannot avail itself of the doctrine of sovereign immunity because the present action arises out of a disputed contract between the plaintiff and the state in connection with the construction and alteration of public buildings and structures as part of a public works project. Therefore, argues the plaintiff, the action falls within the protection of General Statutes § 4-61[1] and should not be dismissed because, by enacting this statute, the legislature waived sovereign immunity and authorized suits against the state in circumstances similar to the present. The plaintiff argues that the state does not dispute that (1) the plaintiff had a contractual arrangement with the state; (2) the state, through Fusco and Manafort, conducted demolition work in violation of its agreement with the plaintiff; (3) the demolition was undertaken as part of a plan involving a public works project; (4) the plaintiff's claim involves a dispute under the contract between the plaintiff and the state; and (5) proper notice has been given to the appropriate state agencies, as required by General Statutes § 4-61. Therefore, argues the plaintiff, General CT Page 12959 Statutes § 4-61 applies and authorizes the plaintiff's action because the state, having waived its immunity, can be sued directly by the plaintiff in the Superior Court for the damages suffered.
The state is immune from suit unless it consents to being sued. Lacasse v. Burns, 214 Conn. 464, 468, 572 A.2d 357 (1990);Owner Operators Independent Drivers Assn. of America v. State,209 Conn. 679, 684-85, 553 A.2d 1104 (1989). The doctrine of sovereign immunity serves an important purpose because it prevents unjustifiable interference with the state's performance of its functions. By appropriate legislation, however, the General Assembly may "waive the state's sovereign immunity from suit and authorize suits against the state." (Internal quotation marks omitted.) Lacasse v. Burns, supra, 214 Conn. 468. "Section4-61 of the General Statutes is an express waiver of sovereign immunity limited to actions brought against the state pursuant to certain types of contracts involving the construction of public works between the state and other parties." Berger, LehmanAssociates, Inc. v. State, 178 Conn. 352, 355, 422 A.2d 268
(1979).
"When the state waives that immunity by statute . . . a party attempting to sue under the legislative exception must come clearly within its provisions, because [s]tatutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed. . . .Where there is any doubt about [the] meaning or intent [of a statute in derogation of sovereign immunity, it is] given the effect which makes the least rather than the most change in sovereign immunity." (Citations omitted; internal quotation marks omitted.) Federal Deposit Ins. Corp. v. Peabody,N.E., Inc., supra, 239 Conn. 101-02. Thus, a plaintiff asserting legal viability for its complaint against the state, "must prove that there is a precise fit between the narrowly drawn reach of the relevant statute . . . and the contractual language upon which the plaintiff relies." Berger, Lehman Associates, Inc. v.State, supra, 178 Conn. 355-56. Consequently, the issue presented is whether the plaintiff's claim falls squarely within the provisions of General Statutes § 4-61. We conclude that it does not.
"As with any issue of statutory interpretation, our initial guide is the language of the statute itself." Herbert S. Newman Partners v. CFC Construction Ltd. Partnership, 236 Conn. 750, CT Page 12960 756, 674 A.2d 1313 (1996). For purposes of the plaintiff's action, the crucial phrase in the statute is the one defining the types of contracts that come within the law's waiver: a contract between the state and a party with whom the state has contracted "for the design, construction, construction management, repair or alteration of any state highway, bridge, building or other public works of the state. . . ." General Statutes § 4-61. The plaintiff's complaint and the deed submitted as plaintiff's Exhibit A make it clear that the contract between the plaintiff and the defendant is merely an agreement setting forth conditions pertaining to the sale of the subject property to the state. Therefore, construing the term `construction contract' within the meaning of the term as used in General Statutes § 4-61, to include an agreement pertaining to conditions for the purchase and sale of real estate and set forth in a deed, such as the one at issue in the present case, would extend the scope of General Statutes § 4-61 beyond the legislative intent.
"The legislative intent is to be discerned by reference to the language of the statute, its legislative history and surrounding circumstances, the policy it was designed to implement, and the statute's relationship to the existing legislation and common law principles governing the same subject matter. (Citation omitted; internal quotation marks omitted.)Hunte v. Blumenthal, 238 Conn. 146, 152, 680 A.2d 1231 (1996). It is therefore necessary to determine whether the legislature intended that agreements incidental to a contract for the purchase or sale of real property be included in General Statutes § 4-61 if subsequent to the purchase by the state, the property is used for a public work construction project which forms the basis for a claim by the seller. The legislative history of General Statutes § 4-61 reflects a narrow and limited purpose for the exception to sovereign immunity provided by the statute and indicates that agreements like that at issue in the present case were not contemplated. The legislative intent was only to create a mechanism through which construction contractors could bring a direct suit against the state in order to provide a more efficient and cost effective way to conduct the bidding process.
Prior to the enactment of General Statutes § 4-61, a contractor could not bring an action against the state for a claim under a construction contract unless he received individualized legislative authorization to sue. In 1957, because of the increased number of petitions seeking such authorization, CT Page 12961 the legislature enacted General Statutes § 4-61. 7 S. Proc., Pt. 3, 1957 Sess., p. 1636. In fact, the goal of the legislature was to reduce the number of present and anticipated future petitions for permission to sue the state arising out of construction contracts. 7 H.R. Proc., Pt. 4, 1957 Sess., p. 1937. Furthermore, in enacting the statute, the legislature was hoping to reduce the cost of construction projects to the state by eliminating the cost of the legislative authorization process that was often built into state construction contracts. Conn. Joint Standing Committee Hearings, General Law, Pt. 2, 1957 Sess., p. 436.
Representative August, one of the proponents of the bill, stated that "[t]he purpose of this bill is to avoid the necessity of contract wars with the State Highway Commission or the Public Works Commissioner in construction contracts . . . ." (Emphasis added.) 7 H.R. Proc, Pt. 4, 1957 Sess., p. 1937. Senator Filler, commenting on the bill stated: "this bill would permit any person, firm or corporation who has a contract with the state through the public works department or state highway department to bring an action to Superior Court in Hartford on any of the disputed claims. . . .I believe that the bill will resolve eventually in better bids on state projects." 7 S. Proc., Pt. 3, 1957 Sess., p. 1636. Research failed to discover any language pointing to a legislative intent to expand the kind of contracts for which the state has waived sovereign immunity under General Statutes § 4-61 to include agreements such as the one at issue in the present case. "In the absence of evidence of legislative intent to waive its immunity in cases such as this, we presume that the legislature meant to exclude such contracts from the operation of the statute." De Fonce Construction Corp.v. State, 198 Conn. 185, 189, 501 A.2d 745 (1985).
The legislative history of subsequent amendments to the statute is equally devoid of any language designed to expand the kind of contracts for which the state waived its sovereign immunity under General Statutes § 4-61 to include contracts for the purchase and sale of real property. See 34 S. Proc., Pt. 6, 1991 Sess., p. 2165; 34 H.R. Proc. Pt. 22, 1991 Sess., pp. 8531-35. On the contrary, Representative Godfrey, commenting on the bill, pointed out that its original purpose had not changed. Representative Godfrey stated: "This amendment which is the bill, represent an agreement between the Connecticut Construction Industry Association, the construction section of the Connecticut Bar Association, the Connecticut Department of Transportation, CT Page 12962 and the office of the attorney general. . . .The purpose of this is to create a fairer process for the resolution of claims brought by construction contractors against the state." 34 H.R. Proc., Pt. 22, 1991 Sess., P. 8531. Such language points to the conclusion that the legislature contemplated that only claims arising out of a construction contract between the state and contractors employed by the state could be redressed in Superior Court.[2]
The plaintiff had no contractual obligation with the state to perform any specific duties related to construction, nor did it contract with the state to deal with any matter pertaining to the project at issue. The legislature, by enacting General Statutes § 4-61, did not intend to expand the kind of claims that could be brought against the state to include claims arising out of agreements incidental to the sale or purchase of real estate which is later used for a public works project, but only to provide an easier and more cost effective mechanism to solve disputes between the state and the contractors employed by the state if such disputes arise out of a contract for public works. The plaintiff has failed to allege that it is a contractor, that it was awarded a construction contract by the state or that its claim arises out of the awarding of a construction contract. Consequently, the plaintiff cannot avail itself of the protection afforded by General Statutes § 4-61 because the present case does not fall within the purview of the statute.
Connecticut courts "have long recognized the common-law principle [the doctrine of sovereign immunity] that the state cannot be sued without its consent. . . ." Barde v. Board ofTrustees, 207 Conn. 59, 64, 539 A.2d 1000. Absent any allegations that the plaintiff has sought or received consent to sue the state in this matter, the doctrine of sovereign immunity applies and the state's motion to dismiss is granted.
HENNESSEY, J.