[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
This is a medical malpractice action originally commenced in the Judicial District of Hartford/New Britain at New Britain on or about September 12, 1995. Defendants requested a revision of the complaint on November 9, 1995 which request contained approximately seventy-six requested revisions. Plaintiff's attorney, Henry Marcus, hereinafter "Marcus", had turned over to Attorney John Pirina, an assistant in his office, the task of responding to the Request to Revise. Unfortunately, Attorney Pirina let the time in which to object to these requests to revise expire. Therefore, Marcus was stuck with having to reply to all seventy-six revisions, a formidable obligation indeed. On February 8, 1996 Marcus filed an amended and revised complaint (see Plaintiff's Addendum dated May 17, 2000). Defendants, not satisfied with the revised complaint, went before Handy, J. who on February 15, 1996 ordered compliance by March 1, 1996. Plaintiff then filed another revised complaint dated July 26, 1996. On August 22, 1996 defendants filed an objection to the revised complaint. On November 12, 1996, the Court, Handy J., ordered compliance with the requested revisions by November 30, 1996 in effect sustaining the objections of the defendants. A third revised complaint was filed on February 13, 1997. The defendants objected to this complaint on March 13, 1997. The plaintiff then moved for an extension of time to respond to the objection, and the motion was denied CT Page 8841 on April 7, 1997. The plaintiff's action was exempted from dormancy in December of 1996. The plaintiff moved to exempt her action from the dormancy calendar a second time on April 30, 1997. The motion was denied May 6, 1997, and her action was dismissed on June 20, 1997. On October 17, 1997 the plaintiff moved to reopen the dormancy dismissal citing, inter-alia, marital problems and other litigation all of which resulted in emotional depression that required hospitalization on two occasions. Nonetheless, the plaintiff's motion to reopen was denied on November 3, 1997. On or about April 14, 1998 the plaintiff filed the present action in the Superior Court Judicial District of Hartford at Hartford under the Accidental Failure of Suit Statute, Section 52-592. Defendants have made this motion for summary judgment claiming that the Accidental Failure of Suit Statute does not apply under these circumstances.
 STANDARD OF REVIEW
In ordinary cases summary judgment may be granted if there is no issue of disputed fact and the moving party claims successfully that it is entitled to judgment as a matter of law. This case is a little different. The seminal case covering this issue is Ruddock v. Burrowes,243 Conn. 569, 576-577 (1998). According to Berdon, J. in his dissent at pages 580, 581, "This Court has always considered that disciplinary dismissals due to a lawyer's misconduct constitute a failure `for any matter of form' within the meaning of Section 52-592 (a) citing Lacassev. Burns, 214 Conn. 464 (1990), and Gionfrido v. Wharf Realty, Inc.,193 Conn. 28 (1984) . . . In 1984 this Court took it upon itself to indicate to the plaintiff, who lost his appeal from the trial court's denial of his motion to open a judgment of dismissal under Section 251 (which was the basis for a dismissal in the instant case) that he was not without remedy and, inter-alia, may commence a new action pursuant to General Statute Sec. 52-592 . . . The Court then noted that a judgment of dismissal for failure to prosecute is failure of `a matter of form' . . . In Lacasse, this Court affirmed the trial court's ruling which was based largely on Gionfrido, supra, `that a dismissal entered pursuant to Sec. 251 would not bar a subsequent action brought under the authority of Sec. 52-592." Emphasis added. In Ruddock at page 576, Justice Peters stated "We already have observed that in appropriate cases a dismissal entered pursuant to Practice Book Sec. 251 would not bar a subsequent action brought under the authority of Sec. 52-592." Justice Peters inRuddock further stated "Whether the statute applies cannot be decided in a factual vacuum. To enable a plaintiff to meet the burden of establishing the right to avail himself or herself of the statute, a plaintiff must be afforded an opportunity to make a factual showing that the prior dismissal was a matter of form in the sense that the plaintiff's noncompliance with a court order occurred in circumstances CT Page 8842 such as mistake, inadvertence or excusable neglect."
 DISCUSSION
Accordingly this Court held a hearing on June 28, 2001 to give the plaintiff said opportunity to make a factual showing.
The Court bases its decision upon the credibility of the witnesses which is based, inter-alia, upon their demeanor on the witness stand, their ability to recall certain events, the consistency or inconsistency of their testimony and their ability to respond to questions, in particular on cross-examination. The Court found Attorney Henry Marcus and the witnesses he presented to be credible witnesses. Based upon their testimony and the exhibits entered into evidence this Court finds as follows:
 1. Attorney Marcus testified, and the Court finds that he was treated for depression in 1993 by Dr. Gordon. The depression became worse in 1994 and 1995 while he was being treated by Dr. Gregory J. Bombassei (hereinafter "Bombassei"). See plaintiff's Exhibit 3, the University of Connecticut Health Center records regarding outpatient treatment in 1993 which states, interalia, "he continues to be quite stressed with no improvement in his depression. Now on two Prozac a day over the last week." That document alone indicates that he was suffering from depression as far back as 1993. He was admitted to the Institute of Living on November 9, 1996 with a history of major depression and being unresponsive to anti-depression medication. He received six to seven electric shock treatments (ECT) for his depression. He had also become a diabetic and was suffering from coronary artery disease. He was medicated with Remeron 15 mg. which was increased to 45 mg., Atenolol for his heart condition, Isordil for angina. He was readmitted to the Institute of Living from December 9, 1996 to December 24, 1996 at which time it was indicated that he had been on depression medication and suffering from major depression for at least eight months prior to his admission. This would take him back to at least April 1 1996 as the period in which he was severely depressed. He was supervised at the Institute by a psychiatrist, Dr. Servio Mejia (hereinafter "Dr. Mejia"). It was also noted in CT Page 8843 plaintiff's Exhibit 2, the Institute of Living report, that he received the highest rating, number 4, on the Hamilton psychiatric rating schedule for depression. He was further diagnosed with obsessive and compulsive symptoms. He had previously been hospitalized on October 12, 1994 for major depression. He has continually taken Isordil for angina. He was diagnosed on May 20, 1994 by Dr. Bombassei with depression.
 2. Plaintiff's Exhibit 4, the clinical record of Silver Hill Hospital in New Canaan, Connecticut, shows that he was admitted on April 6, 1997 and discharged on April 8, 1997. He was suffering from depression caused by marital problems, IRS problems and an inability to concentrate. According to the report he showed poor concentration, thinking was circumstantial, his mood was dysphoric and his judgment was impaired. He was diagnosed with "Major depression, recurrent, coronary artery disease, diabetes, arthritis and that the psychosocial stressors were his marital relationship and deteriorating situation at work."
 3. He was admitted to New Britain General Hospital from January 9, 1998 to January 15, 1998, suffering from chronic pulmonary disease, a history of depression, coronary artery disease, anxiety and sleep apnea. Shortly thereafter he was admitted to the UCONN Health Center from May 21, 1998 to May 26, 1998 with congestive heart failure and chronic pulmonary disease.
 4. On April 22, 1997, which was just prior to Marcus moving to exempt plaintiff's action from dormancy a second time on April 30, 1997, he was admitted to the Center for Breathing Disorders, the Gaylord-Yale Sleep Laboratory where he was diagnosed with sleep apnea, periodic leg movement disorder and sleep fragmentation.
 5. It was noted in the November 9, 1996 hospitalization at the Institute of Living that Marcus was unable to complete his tasks.
 6. Defendants claimed during the hearing that he was CT Page 8844 able to file the motions to exempt from dormancy and to file motions for extension of time. However, this Court finds that that is a far cry from the complications of revising a complaint in response to approximately seventy-six requests for revisions. Although no one is faulting the defendants for making these requests for revisions, the task of responding to them was overwhelming to Marcus in view of his physical and emotional condition.
 7. It should be noted that in January 1998 Marcus was suffering from sleep deprivation, shortness of breath, and was receiving anti-depressant medication, some of which have the side effects of making him sleepy. On several occasions he almost fell asleep in court.
 8. Defense counsel asked Marcus why he did not bring these factors to the attention of the Court. He did so in his motion to reopen dated October 17, 1997 which is an exhibit in this case, but tried to avoid complaining about his medical problems for fear of being temporarily suspended from the practice of law.
 9. According to the exhibits and Marcus' testimony he was seen every two weeks by Dr. Mejia, the psychiatrist, from approximately April 1996 until July 1997. He stayed with Dr. Bombassei into 1998 when he switched to an internist who was located closer to his home in Simsbury.
 10. The Court also heard from Terry Kelliher who was the property manager of the building which housed Marcus' law office. Their offices were adjacent to each other. The Court found Mr. Kelliher to be a credible witness and concludes that they spent a lot of time together from the period of 1995 through part of 1998. During that period Marcus was suffering from acute depression, was unable to function correctly, struggled to maintain his practice of law and was unable to sleep.
 11. Lucy Favrow, whom the Court found to be credible, who had been employed by Marcus as secretary and general manager of his office from March 1986 to CT Page 8845 March of 2000, with the exception of twenty-six weeks in 1998 during which she was laid off. The Court concludes from her testimony that in late 1995 Marcus became very ill and this lasted until the middle of 1998. He was on several medications, was forgetting things, he was not coming into work, and that he saw Dr. Mejia every two weeks for more than a year. In addition he had automobile accidents in August 1996 and on July 11, 1997. At times Ms. Favrow would go to court with Marcus to make sure that he did not fall asleep. This was at the time he was suffering from sleep deprivation. The deadlines in his office for cases were not met because of his illnesses.
 12. Throughout this period of 1993 through 1998 he was medicated with Zoloft, Welbutron and Remeron (up to 45 mg) all well known anti-depressants.
Based upon the totality of the evidence, this Court concludes that Marcus' conduct from the time he brought the suit in New Britain, known as Sanchez No. 1, to the time it was dismissed and the motion to reopen was denied did not rise to the level of egregious misconduct particularly in view of his medical and mental conditions during that period. The Court finds that such conduct was excusable neglect.[1] This is in contrast to those cases in which egregious misconduct was found such as lying to the Court, refusing to continue with trial for no good reason and/or doing something that is contemptuous to the Court.
Further, the defendants claim that a substantial burden will be placed upon the caseflow function of civil trials if C.G.S. Sec. 52-592 is applied in this case.[2] However, it should be noted in Ruddock v.Burrows, supra, that the Court stated: "The burden of bringing a new action sufficiently vindicates the demands of caseflow management. `[I]t cannot be said that a disciplinary dismissal that does not preclude a litigant from commencing another action on the same claim is wholly ineffective as a sanction, since additional legal fees and expenses must be incurred in doing so and the new suit must normally await the disposition of earlier cases" Id. 577, citing Lacasse v. Burns, supra,214 Conn. 474.
For all of the foregoing reasons, plaintiff may maintain her suit under C.G.S. Sec. 52-592. The motion for summary judgment on that basis is denied.
 — — — — — CT Page 8846
Defendants have also moved for summary judgment on Counts Nine, Ten and Eleven of the complaint claiming that they fail to allege sufficient facts to support a cause of action for recklessness. Although it is true that a recklessness count cannot be a mere recitation of a negligence count just adding the words recklessly, wantonly, etc., it appears to this Court that the actions described were more reckless than negligent and that there are factual claims in the recklessness counts that are not in the negligence counts. In any event this Court is reluctant to grant a motion for summary judgment on the basis of this claim by the defendants. It should have been brought as a motion to strike and was not, and, although it is permissible to bring a motion for summary judgment under these circumstances as well as a motion to strike, the Courts do not favor motions for summary judgment for such a situation. This Court is particularly uncomfortable with a motion for summary judgment because if granted, the plaintiff does not have an opportunity to plead over as she would after the granting of a motion to strike. Accordingly, the motion for summary judgment based on the claims involving Counts Nine, Ten and Eleven as alleged is denied. The defendants are not without remedy, however. At time of trial, this could be brought up as a motion in limine or a motion for directed verdict if the plaintiff fails to prove recklessness and/or in the defendants' request to charge.
RITTENBAND, JTR