BERGER, LEHMAN ASSOCIATES, INC. *v.*
STATE OF CONNECTICUT

LOISELLE, BOGDANSKI, LONGO, PETERS and SIDOR, Js.

Argued March 8—decision released July 17, 1979

*Bourke G. Spellacy,* with whom were *John C. King* and, on the brief, *Thomas J. Shortell,* for the appellant (plaintiff).

*William J. White,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (defendant).

SIDOR, J. The plaintiff, Berger, Lehman Associates, Inc., and the defendant, the state of Connecticut, entered into a contract for services on or about October 1, 1970. The plaintiff performed the work called for by the contract, and submitted its final billing which the state refused to pay. The plaintiff brought suit against the state for payment of the amount billed plus damages. The referee to whom the parties submitted the dispute concluded that Lehman's suit against the state was barred by sovereign immunity, but in a supplemental memorandum alternatively decided that, even if the state could be sued, it would still prevail because its method of computing the final bill was the proper one. The plaintiff on appeal claims that the trial court erred, inter alia, in concluding that the plaintiff's action was not encompassed within the permission to sue the state granted by § 4-61 of the General Statutes.[1]

---

[1] The relevant statutory provision is the version passed in 1969, which was in effect at the time the contract was written. Public Acts 1969, No. 429.

The facts as found by the trial court sufficient for the purposes of this decision[2] are as follows: The plaintiff, a New York corporation licensed to engage in professional engineering in Connecticut, and the state, through the commissioner of transportation by the deputy commissioner of the bureau of planning and research, entered into a contract for services, entitled "Agreement Contracting Engineering Services for a Study and Report for a Corridor Location for the Relocation of Connecticut Route 66 from the Vicinity of the Meriden-Middlefield Turnpike to Easterly of the Connecticut River in Portland and Improvement of Connecticut Route 9 from the Vicinity of the South Junction of Connecticut Route 17 in Middletown to the Vicinity of the Sebethe River in Cromwell." The contract provisions describe the plaintiff's work under the agreement as including the following: development and analysis of alternate plans for both routes; coordination and solicitation of the views of interested governmental and private groups and individuals; submission of recommendations and a feasibility study, and of a preliminary and a final report presenting data, analyses, conclusions and recommendations; and assistance and evaluation in response to public hearings. The plaintiff's report was to include details in conformance with certain manuals and documents, and certain information to be used by the state in requesting approval of the corridor location from the federal highway administration. Its report analyzed

---

[2] The plaintiff's extensive attack on the finding and on rulings of the trial court does not merit discussion, because the wording of the statute and of the contract forms a sufficient background for analysis of the dispositive issue. Any changes proposed by the plaintiff would not affect the result and hence are not addressed. *State v. Echols,* 170 Conn. 11, 17n, 364 A.2d 225 (1975).

alternative locations for the route 66 corridor and alternative means of improving route 9, and recommended a choice in each case. The sole object of the plaintiff's report was to provide sufficient data for the state's decision-makers to determine the next course of action with regard to the projected transportation facilities. In addition, the contract provided "[t]hat the Secretary of State of Connecticut or his successors in office is appointed as agent for service of process for any action arising out of or as a result of this Agreement; such appointment to be in effect throughout the life of this Agreement, including any supplements thereto, and six (6) years thereafter."

Section 4-61 of the General Statutes is an express waiver of sovereign immunity limited to actions brought against the state pursuant to certain types of contracts involving the construction of public works between the state and other parties.[3] The crucial phrase in the statute is the one defining what kind of contract comes within the law's waiver: "a contract . . . for the design, construction, repair or alteration of any state highway, bridge, building or other public works." The critical word "design" was added to the statute by Public Acts 1969, No. 429. The plaintiff asserts that "design" includes the work described in and performed under its con-

---

[3] "[General Statutes] Sec. 4-61. ACTIONS AGAINST THE STATE ON HIGHWAY AND PUBLIC WORKS CONTRACTS. Any person, firm or corporation which has entered into a contract with the state, acting through any of its departments, commissions or other agencies, for the design, construction, repair or alteration of any state highway, bridge, building or other public works may, in the event of any disputed claims under such contract, bring an action against the state to the superior court for Hartford county for the purpose of having such claims determined . . . ."

tract with the state, and that the state has therefore consented to suit under that contract. We do not agree.

It is the well-established and recently reaffirmed law of this state that the sovereign is immune from suit unless the state, by appropriate legislation, consents to be sued. *State* v. *Chapman,* 176 Conn. 362, 364, 407 A.2d 987 (1978); *Baker* v. *Ives,* 162 Conn. 295, 298, 294 A.2d 290 (1972); *State* v. *Hartford,* 50 Conn. 89, 90–91, 47 A. 622 (1882). When the state waives that immunity by statute, however, a party attempting to sue under the legislative exception must come clearly within its provisions, because " '[s]tatutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed . . . . Among the statutes in derogation of sovereignty and subject to the rule requiring strict construction in favor of the state are those allowing suits against the state or its representative, creating a claim against the state or waiving immunity from liability.' 82 C.J.S. 936, Statutes, § 391. See *Murphy* v. *Ives,* 151 Conn. 259, 196 A.2d 596; 2A Sutherland, Statutory Construction (4th Ed.) § 58.04." *Spring* v. *Constantino,* 168 Conn. 563, 570–71, 362 A.2d 871 (1975).

Under that rule of construction, the plaintiff must prove in this case that there is a precise fit between the narrowly drawn reach of the relevant statute, § 4-61, and the contractual language upon which the plaintiff depends. In other words, did the plaintiff contract to "design" public works for the state?

The word "design" is not defined in the statute. We note that the word is given content by the dic-

tionary as follows: "plans and drawings necessary for the construction of (a building . . .) which the workmen have to follow out." 3 Oxford Dictionary (Murray Ed. 1897). This narrow meaning is appropriate given the strict rule of construction we must follow. We conclude that the amendment to permit a suit on contracts for "design" was passed to allow designers of actual construction to sue the state. There is no expression of legislative intent to the contrary. See *Anderson* v. *Ludgin,* 175 Conn. 545, 552–55, 400 A.2d 712 (1978). Moreover, a statute associated with a trade or business may be read in that particular context, and words in the statute "should be accorded the meaning which they would convey to an informed person" in that field. *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 474–75, 217 A.2d 698 (1966); see *Spellacy* v. *American Life Ins. Assn.,* 144 Conn. 346, 354, 131 A.2d 834 (1957). The persons who contract with the state to accomplish work related to the construction of public works are involved in the field of engineering and, as informed professionals, would read the statute's words in their engineering sense. The trial court concluded that the word "design" has, in the engineer's lexicon, the same narrow definition as the one we are compelled to follow under the rule of strict construction.

The plaintiff has also suggested that the contractual provision for service of process on the secretary of the state as agent acts as a nonlegislative waiver of sovereign immunity. The provision is in no way an explicit waiver, and, even if it were, the executive is not the appropriate authority to waive the state's immunity. Legislative action is necessary for the state to consent to suit. *Fidelity Bank* v. *State,* 166 Conn. 251, 253, 348 A.2d 633 (1974).

We therefore conclude that § 4-61 does not waive immunity from suits based on the type of contract presented here. Further, the state has not consented to be sued by any other means.[4] The trial court's supplemental judgment finding for the state is, therefore, unnecessary, because the court was without jurisdiction to render judgment on the merits. This conclusion obviates a review of other claimed errors.

There is no error.

In this opinion the other judges concurred.

---

[4] Contractors such as the plaintiff are not, however, necessarily without a remedy. Such claims may be presented to the claims commissioner, pursuant to General Statutes §§ 4-141–4-165b, who may rule on claims under $5000 and who, on claims in excess of $5000, makes his recommendations to the General Assembly. In addition, the claims commissioner may authorize actions against the state. General Statutes §§ 4-158, 4-159, 4-160.