[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: CROSS MOTIONS FOR SUMMARY JUDGMENT
The above entitled matters are related actions seeking damages for wrongful death and personal injuries sustained by minor girls arising out of severe thunder storm that struck their camp site at the Black Rock State Park on July 10, 1989. A thunder storm uprooted trees that fell on the girls' tents resulting in the death of Jennifer Bike and injuries to Melanie Bike and Jaime King. CT Page 455
Pursuant to General Statutes § 4-160(a), the Claims Commissioner of the State of Connecticut granted, on June 28, 1991, permission to the plaintiffs to sue the State of Connecticut for damages arising from the incident of July 10, 1989. In September 1991, the respective plaintiffs instituted actions as against the State of Connecticut seeking monetary damages, and alleging negligence in various respects including the failure to have adequately trained personnel and the failure to warn of the impending thunder storm. The factual basis of the plaintiffs' claim appears to be that the State received advance warning of a dangerous thunder storm and negligently failed to communicate that warning to the plaintiffs so that they could seek adequate shelter. In May 1992 the State of Connecticut sought and received permission to file a third party complaint against the Church of Jesus Christ of Latter Day Saints, ("the third party defendant"). The third party complaint alleges that the minor campers were under the supervision and control of the third party defendant and that the third party defendant was negligent in not adequately anticipating changing weather conditions and failing to adequately instruct the minor campers to take precautions to protect themselves so as to provide safe shelter for them. The third party complaint describes the negligence as active and the immediate cause of the injuries.
The First Count of the third party complaint sets forth a claim for indemnity and the Second Count sets forth a claim for apportionment of liability pursuant to General Statutes § 52-572h. The third party defendant has filed a Motion for Summary Judgment, with accompanying memorandum and documentary evidence, asserting that the State cannot satisfy the elements necessary to establish a cause of action for indemnity and that the action was not brought within the two year period set forth in General Statutes § 52-584. The third party defendant asserts that both the indemnity and apportionment claims are barred by that statute of limitations. The State has also filed a memorandum in opposition thereto together with accompanying documentary evidence.
"Indemnity involves a claim for reimbursement in full from one was claimed to be primarily liable. . . Ordinarily, there is no right of indemnity between joint tortfeasors. . . Exceptions to this general rule exists, however, where the primarily liable tortfeasor owes an independent legal duty to the secondarily CT Page 456 liable tortfeasor. . . In order to establish that a party was primarily negligent and, thus, liable to indemnify a secondarily negligent tortfeasor the following essential elements must be proved: `(1) the party must have been negligent; (2) its negligence rather than another's was the direct and immediate cause of the injury; (3) it had exclusive control over the situation; and (4) the negligent party's seeking indemnification did not know of the charged party's negligence, had no reason to anticipate it and could recently have relied upon the charged party to act without negligence.'" Atkinson v. Berloni,23 Conn. App. 325, 326-327 (1990) (Citations omitted). See also such cases as Burkhart v. Petrol Plus of Naugatuck, Inc.216 Conn. 65 (1990); Kyrtatas v. Stop Shop Inc. 205 Conn. 694
(1988); Weintraub v. Richard Dahn, Inc. 188 Conn. 570 (1982);Kaplan v. Merberg Wrecking Corp., 152 Conn. 405 (1965);Preferred Accident Insurance Co. v. Musante, Berman SteinbergCo., 133 Conn. 536 (1947).
The issues of whether a party is primarily negligent and thereby liable for indemnification as well as the issue of control are questions of fact. Akinson [Atkinson] v. Berloni, supra at 328, Kaplan v. Merberg Wrecking Corp., supra at 418. "Generally, the determination of whether an act is negligent is a matter for the jury; . . . as is the question of exclusive control. . . A party's actual knowledge and the reasonableness of his reliance on others are also to be determined by the trier of fact. Accordingly, the question of whether a party is primarily negligent and thereby precluded from indemnification from another tortfeasor is ordinarily one for the trier of fact."Weintraub v. Richard Dahn, Inc., supra at 573-574. (Citations omitted).
In its motion for summary judgment, the third party defendant asserts that the issue of whether its negligence was the direct and immediate cause of the injury, the issue of exclusive control and the issue existence of an independent legal relationship all may be resolved as a matter of the law in its favor. In support of its position, the third party defendant has submitted voluminous evidence establishing the facts as it claims them to be. The State, on the other hand, has filed voluminous evidence establishing the facts as it views them to be. It may well be that, if the facts are found as the third party defendant claims them to be, the State would not be entitled to indemnification. However the issue before the court is, in part, is whether a genuine issue of material CT Page 457 fact exists so as to preclude a summary judgment in favor of the third party defendant.
The evidence viewed most favorably to the State would tend to establish the facts hereinafter set forth. The third party defendant arranged to obtain the use of twelve camping sites at the Black Rock State Park for overnight camping upon obtaining permits and the payment of the application fees required therefore. On July 10, 1989, a severe thunder storm struck the area causing trees to fall on the tents in which the campers were located thereby causing the death of Jennifer Bike and injuries to Jaime King and Melanie Bike. The plaintiffs claim that they relied upon the State to provide information with respect to the weather and that the State failed to provide information to the adult leaders who were in charge of the minor campers. Plaintiff further claims that severe thunder watches were issued by the National Weather Service beginning at 3:30 p. m. including a severe thunder storm warning issued at for 4:11 p. m. advising that the storm was "dangerous" with "damaging winds" and "deadly lightning." It further claims that none of the warnings, other than the first, were transmitted to field stations contrary to the procedures of the Department of Environmental Protection and resulted from "operator error". Sometime after 5:00 p. m. a clump of trees fell on the tents in which the minor campers were located.
While many of the facts are disputed the following facts are relied upon by the State. The third party defendant purposefully avoided bringing radios and other amenities to the campsite so that the girls would commune more with nature and with each other as well as to avoid noise. The third party defendant was allotted the twelve specific campsites that they had requested. The park personnel did not know the names, ages or number in the camping party. Prior to obtaining the permits the third party defendant received a brochure entitled "Camping in Connecticut" which stated that campers under 18 must be accompanied by an adult in attendance "who excepts responsibility for the camping party". In each camp site the State provided only a picnic table and a cement fireplace as well as sanitary toilets, showers and faucets. All of their necessary camping equipment was the responsibility of the camper. The third party defendant obtained from its own sources, without assistance from the State, all of the equipment it considered necessary and discouraged the bringing of radios. The park had no role or knowledge of any precamp clinics CT Page 458 conducted by the third party defendant nor in selecting or training camp leaders. Prior to the beginning of the camp, camp leaders never discussed with the campers what should be done in the event of a thunder storm. The camp leaders set up the camp without assistance from park personnel. The camp manual of the third party defendant required adult supervisors at the ratio of 1 to 8 but park personnel informed representatives of the third party defendant that the State required adult supervisors for minors in ratio of 1 to 7 which the third party defendant complied with. Representatives of the third party defendant had actual knowledge that thunder storms were predicted for the afternoon but did not bring a radio to camp nor did they monitor weather forecast during the course of the afternoon. Representatives of the third party defendant did not formulate any plan of what to do in the event of thunder storm or discuss with the campers or each other what should be done in the event of a thunder storm. Between 4:15 and 4:30 p. m. it began to rain and the campers were directed into a tent on the camp site to continue their activities. Some campers at some of the camp sites were moved to a bathroom building in the camp site area but such action was not taken at the camp site where the injuries occurred. Some of the girls eventually became hysterical. One of the leaders went out of the tent to get a lantern and another leader went out to attempt to shore up the tent. While the leaders were outside a tree fell over in the camp site. The leaders then directed the girls to go into a second tent at the same camp site. The campers were located approximately 270 feet from a bathroom building. It was not the policy of the park to notify visitors of thunder storms and park personnel did not inform park visitors or the third party defendant that they would provide such warnings. Personnel were never asked to notify representatives of the third party defendant of any changes in weather conditions. Weather information and advisories including National Weather Service storm watches and warnings were available over general radio stations and over weather radio. It was not policy or practice of the Department of Environmental Protection or the State Park personnel to notify visitors of thunder storm watches or warnings or to advise them to take shelter.
Under such a state of facts, which are not agreed to by the third party defendant, the issue of whether the third party defendant was negligent and whether that negligence was direct and immediate cause of the injury as well as the issue of control over the situation raise questions of fact which the CT Page 459 court cannot resolve as a matter of law.
The third party also asserts that the State is not entitled to indemnification because the State cannot establish that the third party defendant owed to the State a duty based upon an independent legal relationship. See Atkinson v. Beloni [Berloni],
supra at 328. In the present case, the third party defendant was occupying land, pursuant to a permit, owned and operated by the State. Accordingly an independent legal relationship exists and the issue presented to the court is whether it can determine, as a matter of law, whether the third party defendant owed a duty to the State based upon that legal relationship and, if so, the nature and scope of such a duty.
As previous noted, the third party defendant conformed to the State requirements that there be one adult for every seven children. In addition, the booklet provided to the third party defendant prior to the issuance of the permit provided the children under 18 must be accompanied by an adult "who accepts responsibility for the camping party." Whether such a requirement constitutes part of the agreement between the parties for the issuance of the permit must await a factual hearing. Is therefore unnecessary for the court to consider the claims made by the State that the activities of the third party defendant constitutes a "youth camp" within the meaning of General Statutes § 19a-420 or the State's claim that the permit constitutes a lease within the meaning of General Statutes § 23-16.
The third party defendant also claims that the third party action was not brought within two years from the date of the injury as required by General Statutes § 52-584 and that the claims made by the State are accordingly barred. The State, being sovereign, is not impliedly bound by the ordinary Statute of Limitations. Department of Transportation v. Canevari,37 Conn. Sup. 899, 900 (1982) (Appellate Session of Superior Court) and cases therein cited. Statutes limiting rights are not to be construed to embrace sovereignty unless by the expressed terms or necessarily implication such appears to have been the clear intention of the legislature. State v. Goldfarb,160 Conn. 320, 323 (1991).
The third party defendant claims that the granting of the permission to sue to the plaintiffs by the claims Commissioner constitutes a waiver of the application of Statute of Limitations and specifically relies upon General Statutes CT Page 460 § 4-160. That statute provides, in part, as follows:
"The State waives its immunity from liability and from suit in each such action and waives all defenses which might arise from the eleemosynary of governmental nature of the activity complained of. The rights and liabilities of the State in each such action shall be coextensive with and shall equal the rights and liability of private person in light circumstances." The third party defendant claims that the authorization to sue constitutes a waiver of sovereign immunity for all purposes as well as "all defenses" in such action thereby placing the State in the same position of private person with respect to all rights and liabilities.
"When the State waives . . . immunity by statute, however, a party attempting to sue under the legislative exception must come clearly within its provisions, because `statutes in derogation of sovereignty should be constrictly construed in favor of the state, so that its sovereignity may be upheld and not narrowed or destroyed." Berger Lehman Associates, Inc. v.State, 178 Conn. 352, 356 (1979). General Statutes § 4-160 does provide for a waiver of immunity from suit and also provides for the tolling of a statute limitation applicable to an action where authorization to sue has been granted. There is nothing in that statute which by its explicit terms or necessary implication indicates a legislative intent to waive the immunity of the State from the application of Statute of Limitations with respect to any third party action instituted by the State.
In view of the holding of the Court that the State is not subject to the statute of limitations, it is not necessary to consider the remaining claims of the State. It is also not necessary for the court to consider the application of General Statutes § 52-598a (P.A. 93-370) ("action for indemnification may be brought within three years from the date of the determination of the action against the party which is seeking indemnification") or whether the statute is to be applied retroactively as indicated in Shuhl v. New Haven Food Terminal,Inc., (New Haven Superior Court April 26, 1994) (Hartmere, J.) and North Street Elderly Ltd. Ptnrs. v. Kapetan, (Stamford Superior Court January 12, 1994) (Lewis, J.).
As to the claim that the provision of General Statutes § 52-584 precludes a claim for apportionment, the court has previously held that the statute precludes only "an action for CT Page 461 damages" and that a claim for apportionment under General Statutes § 52-572h is not an action seeking to recover damages.Kennedy v. Martiney, 7 CONN. L. RPTR. 354, 7 CSCR 354 (1992) (Rush, J.).
The cross motions for Summary Judgment filed by the State seek to determine the viability of the apportionment claim which is not appropriate for Summary Judgment.
For the reasons set forth however, the Motions for Summary Judgment filed by the third party defendant (#140 and #154 in CV91 287324 and #144 and #165 in CV91 0287123) are denied. Similarly the cross motions for partial Summary Judgment filed by the State (#144 in CV91 0287324 and #150 in CV91 0287123) are denied.