[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 Motion To Strike And Dismiss [102, 102.50]
Plaintiff, Shelly Urban, a state employee, brings this action against the defendant, the Commissioner of the Department of Children and Families (DCF). Plaintiff makes four claims, each based on a claimed statutory violation.
Plaintiff is employed as a registered nurse at the Long Lane School. The Long Lane School is the state-run secured facility for juvenile offenders.
In the course of her duties on May 15, 1999, plaintiff observed another DCF employee, Youth Services Officer (YSO) Olardy Alicea, mistreat a school resident.
The complaint alleges:
 13. YSO Alicea then assaulted the juvenile resident by placing a one-arm choke hold around the resident's neck. The resident was slammed to the floor by YSO Alicea as he continued to apply the choke hold around the resident's neck. After the resident fell to the floor, he bled from a head wound, started to choke, had difficulty breathing and then CT Page 6567 vomited profusely upon the floor.
 14. YSO continued to maintain his choke hold upon the resident for one to two minutes and released the choke hold when YSO John Melly arrived within a short time.
 15. Plaintiff Urban was then assigned to treat a two to three centimeter cut on the resident's forehead. She also noticed abrasions around the resident's neck and throat.
 16. As a registered nurse, plaintiff Urban is a mandated reporter, pursuant to C.G.S. § 17a-101. Pursuant to C.G.S. § 17a-101b, plaintiff Urban had reasonable cause to suspect or believe that the resident had been abused or suffered a non-accidental injury. Accordingly, plaintiff Urban reported the incident to the proper authorities and submitted a form, "DCF-136, Report of Suspected Child Abuse/Neglect".
 17. Plaintiff Urban cooperated with the official DCF investigation of the matter as a material witness to the incident of child abuse. The DCF investigation was led by Human Resource Assistant Director Lynn F. Paton.
 18. The results of the investigation revealed that the choke hold applied by YSO Alicea was not a DCF approved restraint and that YSO Alicea had violated DCF policy regarding the use of restraints on residents.
 19. Although YSO Alicea was suspended from his position without pay for sixty (60) days, he was returned to his position at Long Lane School following his suspension.
 20. Despite plaintiff Urban's desire to keep her identity and her report of the incident confidential, DCF Director of Communications John Wiltsie disclosed her identity and the details of the incident to a reporter for The Hartford Courant. CT Page 6568
Complaint, February 11, 2000
Defendant has moved to dismiss and to strike. Motion To Strike And Dismiss, May 12, 2000. [102, 102.50]
Defendant's basis for dismissal is sovereign immunity.[1] Defendant moves to strike claiming the facts alleged are not within the purview of the statutes she relies upon.
 PROCEDURAL IMPROPRIETY
Defendant has improperly combined motions to dismiss and to strike in one motion. The order of pleading is fixed by rule. P.B. § 10-6. A motion to dismiss is the first pleading permitted. The motion to strike is to be filed after any filed notion to dismiss has been ruled upon.
The court will decide the motions. However, its doing so should not be taken as condoning the practice.[2]
 MOTION TO DISMISS
The motion to dismiss is based on sovereign immunity. Defendant has properly raised this jurisdictional issue by a motion to dismiss. "`[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. (Internal quotation marks omitted.)' Novicki v. New Haven, 47 Conn. App. 734,738-39, 709 A.2d 2 (1998)." Brennan v. Fairfield, 58 Conn. App. 191, 196
(June 13, 2000)." See also, Shay v. Rossi, 253 Conn. 134 (2000); and,Antinerella v. Rioux, 229 Conn. 479 (1994).
 THE SECOND COUNT
The Second Count is predicated on C.G.S. § 17a-28(i). It provides in part:
 ". . . the name of an individual reporting child abuse or neglect shall not be disclosed without his written consent except to . . ." C.G.S. § 17a-28(i).
Needless to say, The Hartford Courant is not among the permitted exceptions.
The gist of the Second Count is plaintiff's rights were violated by the disclosure of her name to The Hartford Courant.
Defendant claims the state has not waived its sovereign immunity with CT Page 6569 respect to a suit based on C.G.S. § 17a-28(i)
Subsection (n) of § 17a-28 states: "Any person . . . aggrieved by a violation of subsection . . . (i), (j) . . . may seek judicial relief in the same manner as provided in section 52-146j;. . . ." C.G.S. §17a-28(n).
The language of § 17a-28(n) does not contain an express waiver of sovereign immunity. Mahoney v. Lensink, 213 Conn. 548, 556 (1990) However, examination of the statute as a whole and its evident purpose necessarily may imply that the legislature intended to allow such an action against the state. Thus, if the very purpose of the statute would be wholly frustrated by not allowing a suit against the state, accomplishment of the statutory objective necessitates an implication the legislature intended to waive sovereign immunity.
Chapter 319 of the General Statutes relates to the establishment, mission, responsibilities, authority, and governance of DCF. Chapter 319 includes § 17a-28. The prohibitions against disclosure contained in § 17a-28 are prohibitions specifically directed at the DCF. Thus, the creation by statute of a cause of action for violation of the disclosure prohibition contained in § 17a-28 strongly implies the Legislature intended that sovereign immunity would not bar a suit against the DCF.
The main purpose of § 17a-28 is the protection of persons entrusted to, or receiving services from, DCF. To that end, for example, records of those persons are made confidential. And such persons are given a right to sue if that confidentiality is breached.
The statute specifically limits who may benefit from its right to sue provision and does so by its definition of "person."
 "`Person' means (A) any individual named in a record, maintained by the department, who (i) is presently or at any prior time was a ward of or committed to the commissioner for any reason; (ii) otherwise received services, voluntarily or involuntarily, from the department; or (iii) is presently or was at any prior time the subject of an investigation by the department; (B) the parent of a person, as defined in subparagraph (A) of this subdivision, if such person is a minor; or (C) the authorized representative of a person, as defined in subparagraph (A) of this subdivision, if such person is deceased;"
C.G.S. § 17a-28(a)(1). CT Page 6570
Plaintiff does not allege any facts which bring her within the confines of "person" as set forth in the statute.
Thus, DOF does not have the sovereign immunity shield if sued, for example, by a Long Lane School resident for a violation of § 17a-28(j). That shield stands where the suit is brought by one, such as the plaintiff here, who is not within the statute's restricted definition of "person." It is significant that subsections (i) and (j) use the term, "the name of any individual," in describing and defining the disclosure prohibition in those statutes. The term, "individual," would include all "persons" as defined in § 17a-28(a)(1). There are individuals, however, who do not come within the narrow statutory "person." Plaintiff is such an individual.
Caution must be exercised when considering the abrogation of sovereign immunity.
 "Moreover, because such statutes are in derogation of the common law, `[a]ny statutory waiver of immunity must be narrowly construed'; Struckman v. Burns, supra; and its scope must be confined strictly to the extent the statute provides. Berger, Lehman Associates, Inc. v. State, 178 Conn. 352, 356, 422 A.2d 268 (1979). . . . Owner-Operators Independent Drivers Assn. of America v. State, supra, 685." (Internal quotation marks omitted.) Mahoney v. Lensink, 213 Conn. 548, 555-56 (1990).
The court has in mind the admonitions of the Supreme Court —
 "It is a matter for the legislature, not this court, to determine when our state's sovereign immunity should be waived. The question whether the principles of governmental immunity from suit and liability are waived is a matter for legislative, not judicial, determination. Rogan v. Board of Trustees, 178 Conn. 579, 582, 424 A.2d 274 (1979); Bergner v. State, 144 Conn. 282, 286-87, 130 A.2d 293 (1957). Duguay v. Hopkins, 191 Conn. 222, 228, 464 A.2d 45
(1983). Sovereign immunity may be waived only through a statute. Id. Any statutory waiver of immunity must be narrowly construed. Id. The state's sovereign right not to be sued may be waived by the legislature, provided clear intention to that effect is disclosed by the use of express terms or by force of a necessary CT Page 6571 implication. Baker v. Ives, [162 Conn. 295, 298, 294 A.2d 290 (1972)]; Murphy v. Ives, [151 Conn. 259, 262-63, 196 A.2d 596 (1963)]. Id." (Internal quotations marks omitted.) Struckman v. Burns, 205 Conn. 542, 558 (1987).
 "It is well established that statutes in derogation of the state's immunity from suit should be strictly construed so that the state's sovereignty may not be undermined. Berger, Lehman Associates, Inc. v. State, 178 Conn. 352, 355-56, 422 A.2d 268 (1979); Spring v. Constantino, 168 Conn. 563, 570-71, 362 A.2d 871
(1975); 2A Sutherland, supra, 58.04. `Under that rule of construction, the plaintiff must prove . . . that there is a precise fit between the narrowly drawn reach of the relevant statute, § 4-61, and the contractual language upon which the plaintiff depends. . . .' Berger, Lehman Associates, Inc. v. State, supra, 356." DeFonce Construction Corporation v. State, 198 Conn. 185, 188, 501 A.2d 745 (1985).
 "In the absence of clear legislative intent, this court will not interpret a statute as waiving the state's sovereign immunity." Struckman v. Burns, 205 Conn. 542, 559 (1987).
Because of the narrow definition of "person" contained in §17a-28(a)(1), the court holds that the legislature has neither expressly or by necessary implication lifted the shield of sovereign immunity for this action.
There are, however, recognized exceptions to sovereign immunity. For example, "[s]overeign immunity does not bar suits against state officials acting in excess of their statutory authority or pursuant to an unconstitutional statute." Shay v. Rossi, 253 Conn. 134, 169 (2000).
 "In those cases in which it is alleged that the defendant officer is proceeding . . . in excess of his statutory authority, the interest in the protection of the plaintiff's right to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine. . . . Id., quoting J. Block, [supra, 59 Harv. L. Rev. 1080-81]. In such instances, the need to protect the government simply does not arise and the government cannot justifiably claim interference with its functions. . . . HortonCT Page 6572 v. Meskill, supra, 172 Conn. 624. Where [however] no substantial claim is made that the defendant officer is acting pursuant to an unconstitutional enactment or in excess of his statutory authority, the purpose of the sovereign immunity doctrine requires dismissal of the suit for want of jurisdiction. Id." (Internal quotation marks omitted.) Id.
Plaintiff's specific allegations regarding the breach of LG.S. §17a-28(i) are —
 "Despite plaintiff Urban's desire to keep her identity and her report of the incident confidential, DCF Director of Communications John Wiltsie disclosed her identity and the details of the incident to a reporter for The Hartford Courant." Complaint, February 11, 2000, p. 6, ¶ 20.
 "By the foregoing acts, omissions, circumstances and events, agents employees and/or officials of the defendant, acting under color of state law, have violated C.G.S. § 17a-28(i) by failing to obtain the written consent of the plaintiff Urban prior to the disclosure of her name to the media as an individual who reported an incident of child abuse or neglect." Complaint, February 11, 2000, p. 10, ¶ 31.
The question then is whether plaintiff's allegations are sufficient to bring this case "within the exception to sovereign immunity for conduct by state actors that is in excess of their statutory authority." Shay v.Rossi, 253 Conn. 168.
Just what conduct is within the exception is far from clear. The Supreme Court has dealt with the question only twice. Antinerella v.Rioux, 229 Conn. 479 (1994); and, Shay v. Rossi, 253 Conn. 134, (2000). The Supreme Court has "never defined the precise contours of the "in excess of statutory authority' doctrine." Shay v. Rossi, 253 Conn. 170. It "ha[s] never decided just how far outside that statutory authority the official must act in order for the doctrine to apply." Id.
In Antinerella, the Supreme Court stated:
 "Although we have recognized the legal principle that sovereign immunity does not apply to suits against state officials acting in excess of their statutory CT Page 6573 authority, we have never had occasion actually to apply that doctrine. This case presents the first opportunity to do so." Antinerella v. Rioux, 229 Conn. 479, 489 (1994)
Regarding, Antinerella, the Supreme Court stated:
 "Antinerella v. Rioux, supra, 229 Conn. 489, was the first case in which we were called upon actually to apply the doctrine that sovereign immunity does not apply to suits against state officials acting in excess of their statutory authority. . . . In that case, we concluded that allegations that the defendant, the high sheriff of Hartford county, had discharged the plaintiff, a deputy sheriff, in order to take his business and personally benefit under the statutorily forbidden and illegal fee splitting arrangements he had made with several appointed deputy sheriffs, were sufficient to constitute an action in excess of the defendant's statutory authority to discharge the plaintiff under the at-will employee doctrine. Id., 491. Important to that conclusion, moreover, was the notion that the defendant's alleged conduct contravened the clear public policy that a high sheriff may not engage in fee splitting, as reflected in General Statutes §§ 6-36 and 6-46. Id., 493." [Footnotes and internal quotation marks omitted.] Shay v. Rossi, 253 Conn. 169-170.
In discussing whether sovereign immunity protected High Sheriff Rioux, the Supreme Court stated:
 "When, however, the state employee acts solely to further his or her own illegal scheme and not to carry out government policy, there is no reason to provide immunity from suit." Antinerella v. Rioux, 229 Conn. 497.
 "By our decision we do not chip away at the doctrine, relax its parameters or expand any well developed exceptions. Rather than rely on any exception to the rule, we hold simply that the doctrine does not apply when there is a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." Id.
These two Supreme Court statements in Antinerella are important and CT Page 6574 illustrative of the beginnings of the Connecticut scope of "the exception to sovereign immunity for conduct by state actors that is in excess of their statutory authority." Shay v. Rossi, 253 Conn. 168.
The second and latest case regarding the exception is Shay v. Rossi,253 Conn. 134 (2000). In that case, the plaintiff's alleged DCF initiated and pursued child abuse and neglect proceedings against the Shay parents based on DCF's suspicions of child abuse and neglect. Well after DCF knew their suspicions were mistaken, and had reliable and convincing information of the error, DCF continued and persisted in their efforts to remove the children from their parents' home and care and to otherwise interfere with the parents' and the children's lives.
The Supreme Court stated:
 "In this respect, the critical factual allegations in the plaintiffs' complaint are that: (1) the neglect and abuse petitions were filed without probable cause and in the face of overwhelming evidence of the absence of abuse and neglect; (2) the defendants' refusal to withdraw the petitions and their insistence that Stephen Shay undergo in-home supervision and counseling were contrary to the evidence in the record and the advice of department staff; and (3) the defendants' conclusion that neglect and abuse of the Shay children had been confirmed was without foundation, unreasonable, arbitrary, wilful, wanton, reckless and malicious, and `designed to vindicate and legiti[mize] their handling of the Shay case which was, from the outset, unlawful, uncaring, and unnecessary.' (Emphasis added.) These allegations, including the last allegation in particular, read broadly in the plaintiffs' favor, as they must be; Bohan v. Last, 236 Conn. 670, 674, 674 A.2d 839
(1996); charge the defendants with improper and self-serving motives in filing the neglect and abuse petitions, in pursuing them for as long as they did, and in pursuing the in-home supervision of the family for as long as they did. The improper and self-serving motives that could be proven under these factual allegations were that, by the time that the petitions were filed and by the time that the in-home supervision was ordered to continue, the defendants knew that these actions were legally and factually unjustified; that the defendants filed the petitions knowing that they were unwarranted; and that they CT Page 6575 nonetheless pursued the petitions and the in-home supervision of the family, not for the statutory purpose of protecting any of the Shay children, but in order to justify those prior unjustified actions. In Antinerella v. Rioux, supra, 229 Conn. 497, we stated that when `the state employee acts solely to further his or her own illegal scheme and not to carry out government policy, there is no reason to provide immunity from suit.' Similarly, if the defendants here acted solely in order to justify their own prior unjustified conduct, and not to carry out the government policy with which they were entrusted, there would be no reason to provide immunity from suit." (Footnote omitted.) Shay v. Rossi, 253 Conn. 173.
The Supreme Court concluded:
"We agree with the defendants, however, that in order to overcome sovereign immunity, the plaintiffs must do more than allege that the defendants' conduct was in excess of their statutory authority; they also must allege or otherwise establish facts that reasonably support those allegations. The plaintiffs' allegations are reasonably supportable by the following facts in the record." [Footnote omitted.] Id., 174-75.
The Court then summarized what facts could have been proven under the Complaint.
 "The totality of these facts, if proven, would permit a fact finder to infer that the defendants filed the neglect and abuse petitions knowing that they were unjustified, and continued them with that knowledge, that they continued the in-home supervision of the Shay family beyond the time that they knew was justified, and that they did so, not for the statutory purpose of protection of the children, but to justify their prior unjustified actions. These inferences would be sufficient to establish that the defendants' conduct was sufficiently egregious as to constitute conduct that was in excess of their statutory authority." Shay v. Rossi, 253 Conn. 180.
Having Shay and Antinerella in mind, the court compares the allegations made by plaintiff to those which have been found sufficient to be "within the exception to sovereign immunity for conduct by state actors that is in excess of their statutory authority." Shay v. Rossi, 253 Conn. 168. CT Page 6576
Plaintiff's specific allegations regarding the breach of C.G.S. §17a-28(i) are —
 "Despite plaintiff Urban's desire to keep her identity and her report of the incident confidential, DCF Director of Communications John Wiltsie disclosed her identity and the details of the incident to a reporter for The Hartford Courant." Complaint, February 11, 2000, p. 6, ¶ 20.
 "By the foregoing acts, omissions, circumstances and events, agents employees and/or officials of the defendant, acting under color of state law, have violated C.G.S. § 17a-28 (i) by failing to obtain the written consent of the plaintiff Urban prior to the disclosure of her name to the media as an individual who reported an incident of child abuse or neglect." Complaint, February 11, 2000, p. 10, ¶ 31.
 Shay states quite specifically —
 "We agree with the defendants, however, that in order to overcome sovereign immunity, the plaintiffs must do more than allege that the defendants' conduct was in excess of their statutory authority; they also must allege or otherwise establish facts that reasonably support those allegations." Shay v. Rossi, 174-75.
Plaintiff does not allege in ipsis verbis that the defendant "acted in excess of its statutory authority." Plaintiff does allege that disclosure of her identity was prohibited by statute. In one sense, her allegation fairly implies the disclosure was unauthorized and that defendant acted in excess of its statutory authority. Does the conduct alleged by the plaintiff trigger the exception?
When discussing the line between merely tortious conduct and that which is "in excess of statutory authority," the Supreme court stated:
 "We do not agree, however, with the suggestion inherent in those authorities, precisely for the reason given by the defendants, namely, that the doctrine of sovereign immunity would be too easily overcome. It would mean, for example, that any tort committed by a state official would not be subject to CT Page 6577 sovereign immunity, because it could hardly be contended that any such official was statutorily authorized to commit a tort." Shay v. Rossi, 172.
Defendant's conduct as alleged was prohibited by statute and therefore unauthorized. But the Supreme Court has rejected the idea "that all it takes to trigger the [in excess of statutory authority exception to sovereign immunity] doctrine is to establish, by a process of statutory interpretation, that the defendants' conduct was unauthorized." [Footnote omitted.] Shay v. Rossi, 253 Conn. 171. Prohibited conduct does not necessarily trigger the exception.
Furthermore, there is no allegation defendant acted "solely to further his or her own illegal scheme and not to carry out government policy."Antinerella v. Rioux, 229 Conn. 497. Nor is there any "allegation of wrongful conduct to promote an illegal purpose in excess of the officer's authority." Id. Nor are there allegations "of improper motives on the part of the defendants." Shay v. Rossi, 253 Conn. 177. There are no allegations akin to those in Shay that defendant acted knowing the actions "were unjustified" or that defendant acted "not for the statutory purpose of protection of the children, but to justify their prior unjustified actions." Shay v. Rossi, 253 Conn. 180.
Plaintiff's allegations do not attribute any improper motive or purpose to DCF or its Director of Communications when he "disclosed her identity and the details of the incident to The Hartford Courant. Complaint, February 11, 2000, p. 6, ¶ 21.[3]
The conduct of the defendant as alleged by the plaintiff is not so far outside DCF's authority as to invoke the "in excess of statutory authority" exception to sovereign immunity.
The cause of action alleged in the Second Count is one for which the state is shielded by sovereign immunity.
Section 17a-28 (a)(1) does not expressly or by necessary implication abrogate sovereign immunity for the Second Count.
The court holds that the allegations of the Second Count do not bring it within the "acting in excess of statutory authority" exception to the sovereign immunity doctrine.
The Second Count is dismissed for lack of subject matter jurisdiction.
 THE THIRD COUNT CT Page 6578
The Third Count is predicated on C.G.S. § 17a-18 (j). It provides in part:
 ". . . the name of any individual who cooperates with an investigation of a report of child abuse or neglect shall be kept confidential upon request. . . ." C.G.S. § 17a-18 (j)
The gist of the Third Count is that DCF violated the plaintiff's rights by disclosing her name to The Hartford Courant.
Defendant claims the State has not waived its sovereign immunity with respect to a suit based on C.G.S. § 17a-28 (j)
The reasons, authorities, and rationale discussed and considered in connection with the Second Count apply equally to the Third Count.
Section 17a-28 (j) does not expressly or by necessary implication abrogate sovereign immunity for the Second Count. Moreover, the allegations in the Third Count do not bring it within the "acting in excess of statutory authority exception" to the sovereign immunity doctrine.
The Third Count is dismissed for lack of subject matter jurisdiction.
 The Fourth Count
The Fourth Count is predicated on C.G.S. § 17a-101 (a). Plaintiff relies upon this language from that section:
 "The public policy of this state is: To protect children whose health and welfare may be adversely affected through injury and neglect . . . and for these purposes to require the reporting of suspected child abuse, investigation of such reports by a social agency, and provision of services, where needed, to such child and family." C.G.S. § 17a-101 (a).
The Supreme Court has described the scope of § 17-38a(a), the immediate precursor of § 17a-101 (a), and which contained the very language plaintiff relies upon.
 "This general statement of the goals of our child welfare laws, although valuable as an aid in construing ambiguous provisions of such statutes, creates no rights beyond those specifically provided CT Page 6579 by the statutes intended to implement that statement of policy. See Black v. Beame, 550 F.2d 815, 817 (2d Cir. 1977)." Savage v. Aronson, 214 Conn. 256, 280, n. 25 (1990)
Although plaintiff's reliance on § 17a-101 (a) as the basis of a cause of action is misplaced, strictly speaking, that is a proper ground for a motion to strike and not a ground for a motion to dismiss. However, in so far as plaintiff predicates a cause of action on § 17a-10l(a), it is subject to dismissal if sovereign immunity applies.
There is no basis for a waiver of sovereign immunity, either express or by force of necessary implication in the statute. For the reasons discussed and relied upon above regarding the Second Count, there is no basis for invoking the "in excess of statutory authority exception.
The Fourth Count is dismissed for lack of subject matter jurisdiction.
 MOTION TO STRIKE
Defendant has moved "to strike the plaintiff's complaint. The defendant maintains that each and every count of the complaint is insufficient as a matter of law." Motion To Strike And Dismiss, May 12, 2000. [102, 102.50]
Counts Two, Three, and Four have been dismissed. Therefore the court can only decide the motion to strike as it relates to the First Count.
The First Count is based upon C.G.S. § 31-51m, the so-called "whistle blower statute.: It states:
 "(b) No employer shall discharge, discipline or otherwise penalize any employee because the employee, or a person acting on behalf of the employee, reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body, or because an employee is requested by a public body to participate in an investigation, hearing or inquiry held by that public body, or a court action.
C.G.S. § 31-51m
In her First Count, plaintiff alleges that the defendant has —
CT Page 6580 "intentionally and willfully embarked on a course of conduct specifically designed to discipline, penalize or retaliate against the plaintiff for her protected activity of reporting the incident of child abuse, challenging the unauthorized disclosure of her identity to the media by DCF and her cooperating with the DCF investigation of the incident as a material witness." Complaint, February 11, 2000, p. 8, ¶ 27.
Defendant claims —
 "To get relief under the whistle blower statute, the plaintiff must establish that she was "discharged, disciplined or otherwise penalized by her employer' (DCF) She has not alleged that she was fired, demoted, disciplined or even deprived of some benefit of her employment. The essence of the plaintiff's allegations is that her employer, DCF, improperly released her name to the press and that her fellow employees, upon learning of her reporting the incident, engaged in behavior that she contends constituted harassment." Memorandum of Law in Support of Motion To Strike And Dismiss, May 12, 2000, p. 6. [103]
Has plaintiff alleged she was "discharged, disciplined or "otherwise penalized" by her employer within the meaning of § 31-51m? She does not allege she was discharged. But has she alleged she was disciplined or otherwise penalized? There are no definitions as such in the statute for "discipline" or "otherwise penalize.
Another subsection of the statute states:
 "(c) Any employee who is discharged, disciplined or otherwise penalized by his employer in violation of the provisions of subsection (b) may, after exhausting all available administrative remedies, bring a civil action, within ninety days of the date of the final administrative determination or within ninety days of such violation, whichever is later, in the superior court for the judicial district where the violation is alleged to have occurred or where the employer has its principal office, for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would CT Page 6581 have otherwise been entitled if such violation had not occurred. An employee's recovery from any such action shall be limited to such items, provided the court may allow to the prevailing party his costs, together with reasonable attorney's fees to be taxed by the court." C.G.S. § 31-51m(c)
By limiting the judicial relief afforded, the statute informs on just what "disciplined" and "otherwise penalized" mean. Thus, "disciplined" and "otherwise penalized" must correlate with the permitted relief. These terms must mean something for which reinstatement, payment of back wages, and/or reestablishment of employee benefits would be a meaningful recompense. "Disciplined" and "otherwise penalized" are restricted to meaning action(s) by the employer which results in the loss of a position, a loss of wages, and/or a loss of employee benefits.
For plaintiff to have a cause of action under § 31-51m, she must allege she (1) lost a position to which she could be reinstated, (2) lost wages, and/or (3) lost employee benefits. Plaintiff has made no such allegations.
As to what she has suffered and which she asks damages for, plaintiff's complaint alleges:
 As a direct and proximate result of the defendant's actions and omissions described above, plaintiff Urban suffers and will continue to suffer:
 a. Loss of marital relations, requiring professional counseling;
b. Loss of sleep and nightmares;
c. Feelings of paranoia;
d. Feelings of extreme anxiety and stress;
 e. Fear for her personal safety and the safety of her unborn child;
 f. Inability to take prescribed medication due to her pregnancy for such mental, physical and emotional distress;
g. Unreasonable intrusion upon her seclusion; CT Page 6582
h. Damage to her reputation;
i. Loss of self-esteem.
Complaint, February 11, 2000, p. 9, ¶ 29.
Plaintiff has not alleged she was demoted or transferred to another position. She has not alleged she has suffered any loss of pay. She has not alleged the loss of any employee benefits. Plaintiff has not alleged a cause of action under § 31-51m. And, plaintiff has not alleged any loss for which the statute affords a remedy.
Plaintiff makes some claim that she could recover, according to the statute, reasonable attorney's fees. The short answer to that claim is that she would have to be the "prevailing party." In view of the court's disposition of the motion to strike, plaintiff has not made any allegations that would make her the "prevailing party."
The First Count does not allege a claim upon which relief can be granted and the motion to strike the First Count is granted.
 SUMMARY
The motion to dismiss is granted as to the Second, Third, and Fourth Counts.
The motion to strike the First Count is granted.
Parker, J